[Civ. No. 8177.   Third Dist.   Aug. 1, 1952.]

IOWA MANUFACTURING COMPANY (a Corporation), Petitioner, v. SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; AMERICAN RIVER SAND AND GRAVEL COMPANY, Real Party in Interest.

Anthony J. Kennedy for Petitioner.

J. Francis O'Shea, District Attorney, for Respondent.

Thomas W. Loris for Real Party in Interest.

ADAMS, P. J.—Iowa Manufacturing Company, hereinafter called Iowa Company, on January 18, 1952, filed in this court a verified petition for a writ of prohibition to enjoin the Superior Court of Sacramento County from proceeding further in an action brought by the American River Sand and Gravel Company, hereinafter called American Company, against petitioner and others, petitioner alleging that said action was brought to recover damages for conversion of certain construction equipment in which, it asserted, petitioner had an interest. Petitioner further alleged summons was served upon it through the Secretary of State of California, that it is a foreign corporation organized and existing under the laws of Iowa, its principal place of business being Cedar Rapids, Iowa, and that at no time did petitioner consent in fact or by force of law to service of process upon the Secretary of State of the State of California as service of process upon it; that on the 30th day of August, 1951, petitioner had not been and was not doing business in the State of California and had never withdrawn from doing business here, had not and did not have a place of business in the State of California, had not had and did not have any agents, offices or employees in the State of California, and had not owned and did not own any property in the State of California. It also alleged that it had appeared specially before the Superior Court of Sacramento County for an order quashing said service of summons, but that said court had denied its motion and purposed to proceed against petitioner unless prohibited by this court.

The American Company, on January 23, 1952, filed a verified opposition to the issuance of the requested writ.

We issued an alternative writ on March 5th, whereupon the American Company, on March 21st, filed a return, wherein it asserted that the Iowa Company "has a world-wide dealer organization and often times accepts in addition to, or in substitution of, the direct obligation of its dealers an assignment without recourse of chattel mortgages or conditional sales contracts between dealers and purchasers," that it has appointed Edward F. Hale Company, a California corporation, to act as its authorized dealer in the sale of its products in California, that in its dealings with this respondent the Hale Company purported to sell to said respondent, on its conditional sales contract, a certain plant; that after said contract was signed it was forwarded by the Hale Company to the Iowa Company, but delivery of the equipment was re-

fused until the American Company had signed a series of drafts payable to the Iowa Company, which drafts were to be used to make payment of each of the installments as and when same became due; that after said drafts were executed by the president of the American Company the equipment was shipped to the latter from Cedar Rapids; that a number of said drafts were paid which indicated on their backs that they were presented by the Iowa Company; that on a later date a dispute arose in connection with the air freight of certain equipment sent by the Iowa Company to the American Company, and that the Hale Company referred the matter to the Iowa Company which allowed the credit, notifying the Hale Company that it would be deducted from the last note in the series; that subsequently the Hale Company sought to take possession of the equipment on the ground that the American Company had defaulted in its payments, whereupon the latter wired the Iowa Company requesting authority to pay the arrearage to the Hale Company; that the Iowa Company authorized the acceptance of the payment, but the Hale Company refused. Respondent also stated in its answer that the Iowa Company sent a factory representative to put the equipment in good working condition. From the foregoing it argued that the Iowa Company was doing business in California, that the assignment of the conditional sales contract gave it a security interest in the property in plaintiff's possession and, therefore, it held property in this state, and that the trial court properly refused to quash the summons.

By stipulation of the parties the transcript of proceedings in the lower court, the exhibits there introduced, and the affidavit of James F. Plumb, president of the Iowa Company, are before us, but we have not been furnished with the clerk's record in the lower court.

The affidavit of Plumb consists in the main of conclusions. The facts as shown by the testimony of plaintiff and his witnesses are substantially the same as the allegations in its return.

█ In the words of the opinion in *Sales Affiliates, Inc.* v. *Superior Court,* 96 Cal.App.2d 134, 136 [214 P.2d 541]:

". . . There is no need for us to indulge in a repetitious analysis of the authorities. Every factual situation where the question arises calls for a comparison of the business

advantages derived from the methods employed by the corporation, with those it would enjoy if it conducted its business through its own offices or paid agents in the state. If the representation which petitioner maintained in the state gave it in a practical sense, and to a substantial degree, the benefits and advantages it would have enjoyed by operating through its own office or paid sales force, it was clearly doing business in the state so as to be amenable to civil process."

Also see *Thew Shovel Co.* v. *Superior Court,* 35 Cal.App.2d 183, 187 [95 P.2d 149].

In the more recent case of *Fielding* v. *Superior Court,* 111 Cal.App.2d 490 [244 P.2d 968] (hearing in Supreme Court denied) it was said at page 494:

". . . The essence of doing business is that the corporation is present within the state sufficiently to constitute it just and equitable that it be amenable to process within the state. (*Milbank* v. *Standard Motor Const. Co.,* 132 Cal.App. 67 [22 P.2d 271]; *Boote's Hatcheries, Etc. Co.* v. *Superior Court,* 91 Cal.App.2d 526, 528 [205 P.2d 31].)"

Also page 496:

"It is proper to note . . . that the injured party is a resident of this state; that it would undoubtedly be burdensome for him to go to New York to sue; that the corporations felt that they were bound to stand behind their products at least as far as federal regulations and actions were concerned. In the final analysis it would seem that this is really not a question of the power of the state, but whether there is afforded to both parties a greater amount of justice by allowing suit in this state rather than requiring it elsewhere. (See 20 C.J.S. 148; *International Shoe Co.* v. *Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].) It can be assumed that adequate notice has been or will be received by the corporations. If this is the case the following language is pertinent: 'In the former it is, of course, a more or less continuing course of business which is meant to be regulated, whereas in the latter the object sought is only to give notice to a corporation of a pending action. The tendency is to hold that whatever is reasonably effective for this purpose is a good service.' (*Beach* v. *Kerr Turbine Co.,* 243 F. 706, 708.)

"Any distinction as to where, exactly, interstate commerce ends and local commerce begins seems to be largely immaterial in deciding the precise problem at hand. Whether the particular business of these corporations is denominated intra

or interstate commerce does not change the fact that they are still doing business in this state."

The writ of prohibition is denied.

Van Dyke, J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied August 20, 1952.

Petitioner's application for a hearing by the Supreme Court was denied September 25, 1952. Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.