[Civ. No. 7943. Third Dist. Aug. 4, 1952.]

CHARLES A. BLISS et al., Respondents, v. CALIFORNIA COOPERATIVE PRODUCERS (a Cooperative Corporation) et al., Defendants; I. C. SHIDLER et al., Appellants.

B. J. Galbreath, in pro. per., for Appellants.

Charles A. Bliss, in pro. per., and C. K. Curtright for Respondents.

SCHOTTKY, J. pro tem.—The instant action was commenced in December, 1933, upon seven promissory installment notes, each having a separate maker, the payee of all of the notes being California Cooperative Producers, a corporation, which had contracted with the various note makers, and others, to can and process crops of cling peaches to be grown by the various note makers. The respondents are transferee of the seven installment notes, California Cooperative Producers having pledged them to respondents to secure the payment of a $5,000 note executed by that corporation payable to the order of respondent.

Following the filing of answer setting up various defenses the action was tried before the court, without a jury, and judgment was rendered in favor of respondents. The three appellants upon the instant appeal appealed from the judgment, and the Supreme Court in *Bliss* v. *California Coop. Producers,* 30 Cal.2d 240, said, at page 248 [181 P.2d 369, 170 A.L.R. 1009]:

". . . In the state of the evidence and the findings we believe the issue of notice should be retried. In the event it is found that plaintiffs had notice, and were not therefore holders in due course, for the guidance of the court we will discuss the issues pertinent to the defenses interposed by appellants."

And at page 255:

"The judgment is reversed and the case may be retried only upon the issue of notice of nonpayment of the first installment at the time of the transfer, and judgment may thereafter be entered in accordance with the views expressed herein in the light of the determination of the issue of notice."

As to the law applicable to the issue to be determined upon the retrial the Supreme Court said at page 246:

". . . Therefore, the rule is that a transferee of an installment note is a holder in due course as to the installments to mature in the future when the transfer is made after one or more but not all of the installments are due on its face unless the past due installments have not in fact been paid and he has notice of that fact."

Upon the retrial of the action the trial court determined that respondents did not have notice of the default on the

first installment; that they were holders in due course against whom the defenses of fraud and failure of consideration could not be asserted; and ordered judgment in favor of plaintiffs and respondents.

Defendants, the three appellants upon the instant appeal, have appealed from said judgment, and their major contention for a reversal of the judgment is that the evidence establishes that the respondents under the law must be charged with notice of the failure to pay the first installments of said promissory notes.

The general background of the transactions here involved and the nature of appellants' defenses have been set forth in the decision of the Supreme Court in the former appeal. From this decision and the evidence introduced upon the retrial it appears that a number of bankers and public-spirited citizens of Sacramento were interested in having the California Cooperative Producers locate a cannery in Sacramento, and that in order to finance the enterprise it was proposed that loans would be made to the cooperative by these citizens upon notes of the cooperative, which notes would be secured by growers' notes to the cooperative. The banks would then advance the money to the cooperative upon promissory notes of these citizens and would hold the note of the cooperative and the notes of the growers as collateral. Mr. Alden Anderson, the President of the Capital National Bank, the bank in whose favor respondents' note was made, was, according to the testimony of respondent Bliss, the official of the bank with whom all of the discussions relating to the note transaction were had prior to the execution of the note of the cooperative, and the entire transaction appears to have been handled in the bank where all of the notes remained. The note of respondents to the bank was dated April 17, 1928; the note of California Cooperative Producers to respondents was dated April 17, 1928; the so-called growers' notes were dated on different dates in May, June and July of 1927, each of said notes being an installment note, with the first installment payable on January 2, 1928. While the testimony is somewhat conflicting as to whether respondents had actual notice that the first installment of the growers' notes was unpaid at the time the notes of the respondents to the bank and the note of the cooperative to respondents were executed, the trial court evidently accepted the testimony of respondent Bliss, who handled the transaction for respondents, that he did not know and did not learn that

said first installment had not been paid until several months after April 17, 1928.

Among the findings made by the trial court were the following:

## "–XII–

"That on or about the 17th day of April, 1928, the said notes of said defendants Shidler, Winchester, Galbreath et al were endorsed by said corporation and delivered for value to said Capital National Bank as collateral security for the payment of the said corporate note of said corporation, and that, at that time, and for a long time thereafter, neither said plaintiffs nor any of them, had any knowledge or notice that the first installment of said promissory notes, or any of them, so endorsed and delivered had not been paid by the makers thereof in accordance with the provisions of said notes or otherwise, and that the plaintiffs were and they are, holders in due course, and for value of the said promissory notes of the said defendants, Winchester, Shidler, Galbreath, et al.

## –XIII–

"That on the 17th day of April, 1928, and at the time said notes of said corporation and of defendants, Shidler, Winchester, Galbreath et al were delivered to said Capital National Bank by said corporation, said bank was acting as the agent, both for said plaintiffs and said defendant corporation, in the taking and acceptance of said promissory notes; that the agency of said Bank, as the agent for plaintiffs, was limited in scope to the right and duty of said bank as such agent, to take and accept on behalf of plaintiff, in the usual course of business, the said note of defendant corporation, and the notes of growers under contract to said defendant corporation, as collateral thereto, and to hold all of said notes as collateral to and as security for the note of plaintiffs to said bank; so that in taking and accepting said notes of defendants, Shidler, Winchester, Galbreath, et al., which notes were over due and unpaid as to the first installment thereof, said bank acted beyond and without the scope of its authority, as agents for the plaintiffs herein.

"That neither said California Cooperative Producers, nor said Capital National Bank informed plaintiffs, or either of them, that the collateral notes or any of the same, which were given as security for the payment of the said California Cooperative Producers note was or were overdue and unpaid in the first or any of the installments thereof, and said plain-

tiffs had never been consulted or had any notice which collateral notes were to be given as such security, nor did said plaintiffs discover such fact until long after the transaction whereby plaintiffs had made and delivered their note to the Capital National Bank; but the said collateral notes were during all of said time kept in the possession of said Bank. That the said Bank, acting through its President, represented to plaintiffs that if plaintiffs would advance to said California Cooperative Producers the sum of $5,000 the said corporation would secure payment of said note with certain notes payable to said corporation in number and amount sufficient to insure the payment of the said note of said corporation when and as the same became due. That plaintiffs relied upon such statements and expected and intended and directed the said Bank to secure notes which were of such character.''

Appellants do not challenge the finding that the bank was to take the notes in the usual course of business, and that in taking notes with overdue and unpaid installments, it acted beyond the scope of its authority. However, appellants argue that the bank, not having any authority to accept said notes for respondents, respondents were not bound by such acts, but that the acts of the bank in accepting said notes was subject to ratification by respondents, and that the bringing of suit upon said notes after knowledge of the facts was such ratification. Appellants cite Restatement of Agency, section 97, where it is stated:

''There is affirmance if the purported principal, with knowledge of the facts, in an action in which the third person or the purported agent is an adverse party:

''(a) brings suit to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized;

. . . . . . . . . . . . . .''

Appellants also cite *Cowan* v. *Tremble*, 111 Cal.App. 458, 462 [296 P. 91]:

''It is well settled as a general rule that an undisclosed principal can either sue or be sued on the contract made by his agent (1 Cal.Jur., Agency, sec. 131, p. 854; *Parker* v. *Otis*, 130 Cal. 322 [92 Am.St.Rep. 56, 62 P. 571, 927]; *Schader* v. *White*, 173 Cal. 441 [160 P. 557]); and the fact that plaintiff brought the action thereon was a sufficient ratification of the acts of Jacobson (2 Cor.Jur., Agency, sec. 132, p. 513;

*Argenti* v. *Brannan,* 5 Cal. 351; *Thompson* v. *Spray,* 72 Cal. 528 [14 P. 182])."

In *Moody* v. *Judah Boas Finance Corp.,* 93 Cal.App. 21 [268 P. 974], the court said at page 25:

". . . It is well settled, however, that whenever an agent acting under a specific authorization has exceeded his authority in the performance of a lawful act, which the principal could have authorized, the principal may thereafter ratify such unauthorized act, and when so ratified it acts retrospectively and the principal is equally bound as he would have been had the original authority been ample, or had he originally performed the act in person (*Market Street Ry. Co.* v. *Hellman,* 109 Cal. 571 [42 P. 225]); and furthermore, as declared by section 1589 of the Civil Code, a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to have been known, to the person accepting."

Respondents, in reply, assert that the bank, as pledgee, was interested in the transactions. They argue that, assuming the testimony that the bank knew the notes to be in default as true (and in view of the findings and the uncontradicted evidence in the record it must be considered as true), nevertheless its agency was strictly limited to the acceptance of valid negotiable paper as collateral security, and that in accepting overdue paper and failing to communicate its knowledge of same to respondents, it acted outside of the scope of its authority and respondents are not bound by that knowledge. They quote from 3 Corpus Juris Secundum, page 205, section 271, as follows:

". . . It must be remembered, however, that the agent's knowledge or notice which is imputed to his principal is limited to that gained by the agent in the scope of his employment, as already discussed in Sec. 264, and consequently the principal is not chargeable with notice of facts within the knowledge of his agent, when such knowledge was acquired while representing interests adverse to those of his principal."

We are unable to agree with respondents' contention that the conclusion of the court that respondents were holders in due course is sustained either by the findings or by the record. The notes of appellants were executed many months before they were delivered to the bank by the California Cooperative Producers. Respondent Bliss, who handled the

transaction for the respondents, testified that he knew that notes of the growers were to be taken as collateral, but ''that neither Governor Anderson nor we knew whose notes would be attached as collateral,'' and that he (Bliss) did not see the collateral notes until weeks after April 17th. Respondents knew that the bank was to accept and hold the growers' notes ''as collateral security to our note when we borrowed the five thousand dollars.'' The California Cooperative Producers, to whom the growers' notes were made, knew that the first installment was in default, the bank knew this also when it took the notes. Respondents apparently were quite willing to have the bank handle the transaction for them and the record fails to show that they made any objection when respondent Bliss saw the growers' notes some time after the loan was made. The record and findings show that the promissory notes sued upon were delivered to respondents by the bank prior to the filing of the instant action and that they filed suit to recover upon said notes.

In the face of the finding that the bank was acting as the agent of both parties in the taking and acceptance of said promissory notes, and that the bank did accept said promissory notes with the knowledge that the first installment thereon was past due, and in view of the fact that respondents accepted said notes from the bank and filed action thereon, we do not believe that it can be held that respondents were holders in due course against whom the defenses of fraud and failure of consideration could not be asserted. In other words, respondents cannot seek to recover upon promissory notes which the bank accepted with knowledge of the first installment being in default, and then, when defenses of fraud and failure of consideration are set up by the appellant grower makers, defeat the right to assert these defenses by contending that the bank only had authority to accept notes on which no installments were past due, and that therefore respondents must be considered holders in due course. For when respondents brought suit upon said notes, they certainly must be held to have ratified the act of the bank in accepting them and the knowledge of the bank at the time the notes were accepted must also be held to have been the knowledge of respondents.

We therefore conclude that the trial court erred in concluding that respondents were not charged with notice of the default on the first installment of the notes and that they

were holders in due course against whom the defenses of fraud and failure of consideration could not be asserted.

Having reached this conclusion on the only issue ordered to be retried by the decision of the Supreme Court, it follows that appellants were entitled to judgment as the Supreme Court stated that "judgment may thereafter be entered in accordance with the views expressed herein in the light of the determination of the issue of notice." For as stated by respondents in their brief:

"We think it apparent from the foregoing that the Supreme Court, in pursuance of whose remittitur this case was retried, was satisfied with the evidence and findings in respect of the other matters in issue in the case, except the single and isolated matter of notice to the appellants of any infirmities in the instruments at the time they were taken by them. In fact the Supreme Court was so far satisfied with the evidence in the matter that it felt itself called upon to discuss the law with respect to defenses interposed by the appellants and treated the evidence as establishing those defenses in the event it should appear that the plaintiffs in the case were not holders in due course."

And as stated by appellants in their reply brief:

". . . The case was being tried *de novo* as to the single issue of notice, decision to go to the party entitled thereto under the law of the case laid down in the decision."

Appellants contend also that the court erred in denying them a jury in the second trial. They argue that even though they waived a jury upon the first trial, and the case was ordered to be retried upon the single issue of notice of nonpayment of the first installment at the time of the transfer, they were nevertheless entitled to a jury trial. Respondents in reply contend that the effect of the decision of the Supreme Court in the former appeal was not to order a complete new trial as in the case of a complete reversal, but was a direction for a continuation of the former trial for the reception of further evidence on the one issue, and that the waiver of the jury was still operative.

The general rule appears to be as stated in a note in 106 American Law Reports at page 205, as follows:

"The weight of authority is that a waiver of a jury trial is not operative as regards a subsequent trial, but that after waiver of a jury trial and a trial without a jury, the right of trial by jury, as regards subsequent proceedings to which it is otherwise guaranteed or applicable, remains available,

and may be demanded and exercised as in original proceedings, in the absence of statute or stipulation governing the matter and compelling a contrary conclusion." (See, also, 50 C.J.S., page 821.)

While it is no doubt true that where there has been a complete reversal and an order for a completely new trial in an action in which a trial by jury is a matter of right, a party is entitled to a jury upon the second trial even though he may have waived it at the first trial, we are inclined to doubt appellants' right to a jury trial upon the limited retrial ordered by the Supreme Court in the instant case. However, it is unnecessary to determine this question in view of the fact that we have sustained appellants' contention that the judgment must be reversed upon the single issue involved.

No other points raised require discussion.

In view of the foregoing, the judgment is reversed with directions to enter judgment in favor of appellants.

Peek, J., and Van Dyke, J., concurred.

A petition for a rehearing was denied September 3, 1952, and respondents' petition for a hearing by the Supreme Court was denied September 25, 1952. Traynor, J., was of the opinion that the petition should be granted.