[Civ. No. 15363.   First Dist., Div. One.   May 29, 1953.]

JAMES W. KNEELAND, Appellant, v. ETHICON SUTURE LABORATORIES, INC. (a Corporation), Respondent.

David E. Adelson for Appellant.

Brown, Rosson & Berry for Respondent.

WOOD (Fred B.), J.—The sole question upon this appeal is whether or not defendant Ethicon Suture Laboratories, Inc., a foreign corporation, was "doing business in this state"

(Code Civ. Proc., § 411), in such a manner and to such an extent as to make it amenable to service of process and to the jurisdiction of our superior court.[1]

This question has two aspects: (1) was this defendant "doing business" here within the meaning of that term as judicially interpreted by the courts of this state, and (2) If so, does that comport with the due process requirement of the Fourteenth Amendment to the Constitution of the United States? (*Bomze* v. *Nardis Sportswear* (2d Cir., 1948), 165 F.2d 33, 35; *Rosenthal* v. *Frankfort Distillers Corp.* (5th Cir., 1951), 193 F.2d 137, 141.)

Incident to an abdominal operation upon plaintiff, his surgeon installed a wire mesh screen for the reinforcement of the abdominal muscular wall. Later the screen ruptured, to plaintiff's injury. He filed suit for damages against Bischoff's (a copartnership), the local distributor from whom the surgeon, as plaintiff's agent, purchased the screen; also, against Ethicon Suture Laboratories, Inc., a corporation, the manufacturer of the screen, and Johnson and Johnson, a foreign corporation, for whom Ethicon allegedly is an agent, a subsidiary, or a division.

In the first count of his complaint plaintiff seeks to hold the defendants, including Ethicon, responsible upon the ground that they warranted the screen to be fit and proper for the indicated use. The theory of the second count of the complaint is that Ethicon and Johnson and Johnson were negligent in the manufacture of the screen and failed to use due care in its construction and in testing it and the materials of which it was made. The local distributor (Bischoff's) and Johnson and Johnson appeared and answered the complaint.

Upon plaintiff's application, the trial court ordered service of summons upon Ethicon as provided in sections 6501 and 6502 of the Corporations Code.[2] Such service was made and thereupon Ethicon specially appeared and moved to quash service. The motion was heard and considered upon affidavits. No oral testimony was introduced. The trial court granted

---

[1]No question is raised concerning the service of process itself; i.e., whether or not it was served in accordance with the requirements of our statute (through our Secretary of State, by registered mail, etc.), or whether or not those requirements comport with the due process clause of the Fourteenth Amendment to the Constitution of the United States.

[2]Because the order for service of summons on Ethicon pursuant to sections 6501 and 6502 was made in August, 1951, and service apparently was made during that month (on August 24, 1951, Ethicon filed its motion to quash), the provisions of those sections as amended by the

the motion, by an order signed and filed. From that order plaintiff has appealed.[3]

Ethicon supported its motion by two affidavits: one by A. J. Bee, its treasurer and assistant secretary; the other, by Jack Edmonson, its Pacific Coast division manager.

Bee states that Ethicon was created and exists under the laws of New Jersey; has had and now has its home office and principal place of business at Brunswick, New Jersey; has never qualified to do business in California; "has been, and now is, engaged in selling a product referred to in the above entitled complaint as tantalum wire meshed screen to surgical supply houses for use in hospitals and by physicians and surgeons"; did not at any time, nor does it, "keep or maintain any stock of merchandise in" California, or "manufacture any of its products in" California; at no time has had, nor has it now, any officer or representative in California "authorized to contract on behalf of" Ethicon "for the sale of any of its products or to make any warranties on its behalf, either express or implied"; that at all times "all sales by" Ethicon "of its products in . . . California were, and such sales now are, subject to confirmation at the principal office of said corporation in New Brunswick, New Jersey, and all orders for products are filled from New Jersey, and said products are shipped into the State of California by public carrier to the

---

Statutes of 1949, chapter 1053, page 1960, and of section 6500, as enacted by the statutes of 1947, chapter 1038, page 2407, govern and apply. (The amendments of these sections made by chapters 628 and 1377 of the Statutes of 1951 did not take effect until September 22, 1951.)

During August, 1951, section 6500 indicated the officers or agents of a foreign corporation to whom a copy of process directed to the corporation could be delivered, to effect service.

Section 6501 provided, under certain circumstances, for application to and order by the court for service by delivery of copies to our Secretary of State, setting forth the address to which such process should be sent by the Secretary of State.

In the case of a corporation which had not filed with the Secretary of State the statement required by section 6403, section 6502 required the Secretary of State, upon receipt of the process, the court order, the address, and his fee, to give notice by mailing (via registered mail, charges prepaid, with request for return receipt) copies of the process and of the order to the address specified in the order.

These sections must be read with that portion of section 411 of the Code of Civil Procedure (as amended by Stats. 1947, ch. 1090, p. 2502) which states that "summons must be served by delivering a copy thereof as follows: . . . 2. If the suit is against a *foreign corporation* . . . *doing business in this state,* in the manner provided by sections 6500 to 6504, inclusive, of the Corporations Code. . . . '' (Emphasis added.)

[3]The order is appealable, as determined by this court in *Kneeland* v. *Ethicon Suture Laboratories, Inc.,* 113 Cal.App.2d 335 [248 P.2d 447].

purchasers of said products''; at all times,[4] Ethicon "was not, and now is not, transacting a substantial part of its business in . . . California'';[5] neither of the causes of action set forth in the complaint "arose in . . . California, and the above entitled court has no jurisdiction either of the subject of said action or of'' Ethicon;[5] that "said corporation at no time sold in the State of California tantalum wire mesh screen to plaintiff in the above entitled action or to any agent for or on behalf of said plaintiff.[5]

Edmonson states that he is "the Pacific Coast Division Manager of Ethicon . . .; that he resides at 12930 Greenleaf Street, North Hollywood, California; that . . . Ethicon . . . employes [*sic*] in California six (6) individuals, including himself; that . . . Ethicon . . . has no office in California; that all such employees of Ethicon . . . are engaged solely in sales promotion work; that the products of said Ethicon . . . are sold in California by supply house distributors; that said supply houses are independent business concerns; that sales of Ethicon . . . are consummated in New Jersey and not in California; and that no collections for sales of products to California supply houses are made in California.''

From these two affidavits it appears that Ethicon's local activity in California consists of "sales promotion work'' by and through six persons employed by it, one of whom, Jack Edmonson, describes himself as "Pacific Coast Division Manager'' of Ethicon and resides in California. The statement in Bee's affidavit that Ethicon "was not and now is not transacting a substantial part of its business in . . . California'' is consistent with the concept of transacting business in California to the extent at least of its "sales promotion work'' mentioned but not in detail described by Edmonson. This, quite clearly, would not be enough to demonstrate that Ethicon was "doing business'' within California under the earlier concept of that term. It might be within the purview of that concept as modified and developed in recent years. Before going into that, it will be well to ascertain to what extent, if at all, the affidavits furnished by plaintiff supply the details of the character and scope of Ethicon's "sales promotion

[4]The expression "at all times'' is used in this summary of the documentary testimony (unless otherwise indicated) as a short form of the expression "during all of the times mentioned in the complaint.''

[5]To the extent that these are statements of ultimate facts or of mixed facts and law, they, of course, represent conclusions or inferences which it is the function of the court to draw.

work''; i.e., to the extent that they do so consistently with the statements appearing in Ethicon's affidavits.

In opposition to the motion to quash, plaintiff presented affidavits by David Adelson, attorney for plaintiff; John F. Wight, assistant administrator of Herrick Memorial Hospital, Berkeley, California, at which institution plaintiff's operation was performed; Paul Givant, purchasing agent for Herrick Memorial Hospital; and Dr. George C. Shipounoff, the surgeon who purchased the tantalum wire mesh screen and performed the operation upon plaintiff. We summarize those portions of their affidavits which do not appear to be in conflict with the facts stated in Ethicon's affidavits.

Adelson states that at all times Ethicon ''has employed and is now employing Jack Edmonson as its Pacific Coast Manager and California Divisional Manager with offices at Suite 104, 444 North Bedford Drive, Beverly Hills, California,'' and said Jack Edmonson in his capacity as California divisional manager of said corporation has been and is now supervising the activities of the local California representatives of said corporation; at all times ''LOUIS J. PACELLI, residing at 68 Shearer Drive, Atherton, California, has been and now is northern California representative of'' Ethicon and ''David Barry has been and was southern California representative of'' Ethicon until August 1, 1951, since which date ''MERLE JUTKINS has been and now is said southern California representative''; at all times said northern and southern California local representatives of Ethicon ''have regularly contacted and visited, and are now contacting and visiting, California hospitals, surgical supply houses, physicians and surgeons for the purposes of (a) detailing them as to defendant's products, (b) generally soliciting their business, . . . , and (e) generally promoting good will and improving public relations of defendant corporation within the state of California''; at all times Louis J. Pacelli as northern California local representative of Ethicon ''has solicited and is now soliciting as hereinbefore described sixteen (16) northern California distributors of said defendant corporation on a weekly, bi-weekly or monthly basis, including the following located in the San Francisco-Oakland-Berkeley area . . . [the names and addresses of four firms in San Francisco, two in Oakland and one in Berkeley] . . . That during all of the times mentioned in said complaint in the above entitled action, said Louis J. Pacelli has regularly and systematically solicited and detailed, and is now soliciting and detailing hospitals in

northern California in behalf of'' Ethicon; at all times ''said Louis J. Pacelli has serviced and is now servicing physicians and surgeons in northern California in behalf of'' Ethicon and ''has attended California conventions of medical, surgical and hospital associations, has exhibited and promoted defendant corporation's products at said conventions and has solicited business in defendant's behalf.''

Wight states that at all times he ''has been visited and contacted and is now being visited and contacted by local representatives of out of state manufacturers of medical, surgical and hospital supplies and equipment,'' and ''has been frequently visited and contacted at said hospital by Louis J. Pacelli, the northern California representative of'' Ethicon; that at the time of such visits Louis J. Pacelli ''has discussed with affiant new products and new developments of . . . Ethicon . . ., has given trade literature of Ethicon . . . to affiant, and has solicited good will and has fostered sound public relations between said hospital and Ethicon . . . ''; that ''Louis J. Pacelli is the northern California representative of'' Ethicon; that at all times ''said Louis J. Pacelli has contacted affiant at conventions of hospital associations in California and that said Ethicon . . . has had exhibits and displays at said conventions''; at all times ''said Louis J. Pacelli has called upon and solicited the Purchasing Department of said Herrick Memorial Hospital.''

Givant states that he has been purchasing agent for Herrick Memorial Hospital since November, 1950; that he ''has been and is regularly called upon at said hospital by California representatives of out of state manufacturers of supplies and equipment purchased and used by said hospital''; that Ethicon is ''an out of state manufacturer which has been and is regularly sending California representatives to call on affiant at said Herrick Memorial Hospital''; that Louis J. Pacelli ''is the northern California representative of'' Ethicon and ''has regularly solicited and is now regularly soliciting affiant at said hospital''; that at all times Louis J. Pacelli ''has represented and is now representing himself to be the northern California representative of Ethicon . . .''; at all times said Louis J. Pacelli ''has pointed out to affiant and is now pointing out to affiant the technical advantages of products of Ethicon . . ., and has apprised affiant and is now apprising affiant of new products and improved products of Ethicon . . .''; at all times ''when affiant has needed and now needs specific technical information concerning products

manufactured by Ethicon . . ., affiant has secured and is now securing said information directly from Louis J. Pacelli at said Herrick Memorial Hospital''; that ''price lists, trade literature and catalogs of Ethicon . . . have been and are now being supplied to affiant by said Louis J. Pacelli''; that ''affiant's decision to purchase for said Herrick Memorial Hospital supplies and equipment manufactured by Ethicon . . . has been and is now being determined by representations and descriptions made by said LOUIS J. PACELLI at said hospital''; that ''affiant is now purchasing and said Herrick Memorial Hospital is using Bio-Sorb powder, umbilical tape, catgut sutures and silk sutures which are manufactured by Ethicon . . .,'' concerning which products ''LOUIS J. PACELLI did detail and solicit affiant at said Herrick Memorial Hospital.''

Dr. Shipounoff states that he is a physician and surgeon licensed to practice in California and maintains offices for the practice of medicine in Oakland, California; that Jack Edmonson is the California divisional manager of Ethicon and has offices at Beverly Hills, California; at all times ''affiant was visited at his offices by said JACK EDMONSON, and that said JACK EDMONSON discussed with affiant certain surgical products manufactured by Ethicon . . .''; that ''LOUIS J. PACELLI is the northern California representative of Ethicon . . .,'' and at all times Pacelli ''came to affiant's offices and detailed affiant on certain products of Ethicon . . ., gave to affiant trade literature of said corporation, and discussed with affiant tantalum wire mesh screens manufactured by said corporation.''[6]

---

[6]It is desirable to note certain statements in Adelson's affidavit which conflict, in greater or less degree, with those in Ethicon's affidavits. We are not giving any consideration to statements by Adelson which appear in the area of conflict.

Adelson says that the California local representatives of Ethicon visit hospitals, surgical supply houses, physicians, and surgeons for the purpose of ''adjusting and settling complaints'' and ''taking orders for defendant's products''; that at all times Ethicon ''has been and is now 'doing business' in . . . California . . . as hereinafter stated so as to be amenable to service of summons,'' that ''the affidavit of defendant Ethicon . . . does not deny that said defendant has a divisional office in California, a divisional manager in California, and local representatives permanently stationed in northern and southern California''; that the causes of action set forth in the complaint ''are connected with business transacted within the state of California by'' Ethicon ''and did arise within the state of California, and that the instant court has jurisdiction over the subject matter of said cause of action''; that at all times Ethicon ''was, and now is, transacting a substantial part of its ordinary business in the state of California and is exercising within the state of

■ Here we have a picture of Ethicon's "sales promotion work" in California. Ethicon's employees are doing just about everything full-fledged sales agents might do except the taking of orders, the delivery of goods, and the collection of the sales price. Ethicon's agents go up and down the state developing business by keeping in touch with Ethicon's supply houses (independent though they be, contractually); making and maintaining contacts with hospital officials and practitioners of the healing arts, describing to them Ethicon's products and keeping them apprised of new and improved Ethicon products; and attending conventions of physicians, surgeons and hospital officials, there carrying on the same type of business development and sales promotional work, including the display of Ethicon products at such conventions.

*Did these activities render Ethicon amenable to process* under the applicable state statutes as interpreted by the courts of this state, and in accordance with the due process clause of the federal Constitution as interpreted by the courts of the United States? We will consider, first, the trend of decision in the courts of this state.

In *Milbank* v. *Standard Motor Const. Co.* (1933), 132 Cal. App. 67 [22 P.2d 271][7] the defendant foreign corporation manufactured engines outside this state and was engaged in selling some of them to purchasers in this state. It sent an engineer into this state to aid local customers with the maintenance of the engines after purchase and delivery. The engineer was authorized to employ mechanics for this purpose but had no authority to execute contracts. Through magazine advertising the defendant urged the public to see this representative as to why they should own defendant's engines. In defining "doing business" as used in section 411, the court referred to the fact that the authorities, "both state and federal," have found it difficult to lay down any all-embracing definition. However, it was pointed out that under *International Harvester Co.* v. *Kentucky,* 234 U.S. 579 [34 S.Ct. 944, 58 L.Ed. 1479], there ". . . must be the carrying on of business to such an extent by the corporation as to manifest its presence

California some of the functions for which it was created"; there is "an agency relationship between defendants Bischoff's and" Ethicon; at all times Ethicon "was and is now 'doing business' in California within the judicially-construed meaning of that term so as to be amenable to process in California."

[7] A petition for hearing by the Supreme Court was denied, 132 Cal. App. 72.

in the state . . .," and on the authority of other state and federal cases it was held necessary that a substantial part of its ordinary business be transacted with some continuity by local agents. (P. 70.) Under these tests it was held the continuous endeavor to service the engines in this state subjected the defendant to local jurisdiction in an action by a local purchaser for breach of contract.

The court in *Thew Shovel Co.* v. *Superior Court* (1939), 35 Cal.App.2d 183 [95 P.2d 149], also had occasion to consider the term "doing business" as used in section 411 of the Code of Civil Procedure. There the defendant foreign corporation operated in this state through two local "distributors." Under the contract with defendant the local distributor was not to be considered an agent of defendant but was to negotiate sales according to prices set by the manufacturer, all sales being subject to the approval of the manufacturer. The distributor had authority to collect sums due and remit to the manufacturer who held all purchase contracts as security. Title to all goods remained in the manufacturer. Under this arrangement the volume of defendant's business in this state ran as high as $300,000 a year. Under these circumstances it was held defendant was "doing business" locally within the meaning of section 411. In so holding the court cited the decisions of other state courts in addition to federal and local cases.

In *Oro Navigation Co.* v. *Superior Court* (1947), 82 Cal. App.2d 884 [187 P.2d 444],[8] the court was concerned with the validity of service of process pursuant to the various sections of the Corporations Code pertaining to the service of process on foreign corporations doing business in this state pursuant to section 411(2) of the Code of Civil Procedure. Without mentioning the latter code section it was held that the "presence" of the foreign corporation is the test of valid service; "presence" meaning the transaction of business by the corporation within the state constituting more than an isolated transaction and having a relation to the purpose for which the corporation was formed. (P. 888.) In support of this test of doing business the court relied upon *International Shoe Co.* v. *Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].

---

[8] A petition for hearing by the Supreme Court was denied, 82 Cal. App.2d 893.

In *Boote's Hatcheries etc. Co.* v. *Superior Court* (1949), 91 Cal.App.2d 526 [205 P.2d 31], the court treated the question of "doing business" under section 411 as the quantum and quality of business activities required by the due process clause as a basis for jurisdiction of the courts of this state over foreign corporations. Relying upon *West Publishing Co.* v. *Superior Court*, 20 Cal.2d 720 [128 P.2d 777], and cases there cited, the court stated that ". . . if it can be said . . . that the corporation is carrying on business in such a manner and to such an extent as to warrant the inference that it is here, it is within the jurisdiction of the courts of this state and hence amenable to process of said courts." (P. 527.) The court held that a foreign corporation which maintained a resident agent in this state who continuously solicited the business of local turkey raisers, entered into contracts for the purchase of eggs, and generally supervised the shipment thereof, was subject to process under section 411 pursuant to the applicable sections of the Corporations Code. We note that the court also based its holding upon the "fair play and substantial justice" test enunciated in *International Shoe Co.* v. *State of Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057], in reference to service of process consistent with the due process requirements of the Fourteenth Amendment.

Later decisions reflect the same tendency to construe the words "doing business" as synonymous with those business activities required by the due process clause as the basis for jurisdiction. In *Sales Affiliates, Inc.* v. *Superior Court* (1950), 96 Cal.App.2d 134 [214 P.2d 541], the trial court's holding that defendant foreign corporation was doing business within the meaning of section 411 was approved. It appeared that defendant's "jobbers" in this state solicited licensing agreements with local beauty shops for the use of certain of defendant's products in return for the payment of an annual licensing fee to defendant plus the local operator's promises to refrain from using any product which infringed any of defendant's patents and to respect prices fixed by defendant for its products. Each licensing agreement was signed by the licensee and forwarded by the jobber to the defendant for execution by it. It was held that the licensing methods used by the defendant gave it "substantially the same commercial advantages that would be available to it through an office or a force of employees maintained in the state devoted ex-

clusively to this phase of its business" (p. 137), hence it was "doing business" for the purpose of section 411.

In *Koninklijke L. M.* v. *Superior Court* (1951), 107 Cal. App.2d 495 [237 P.2d 297],[9] the court, without express mention of section 411, treated the problem as presenting a question of the extent of jurisdiction under the federal Constitution. (P. 500.) Plaintiff in that case brought suit in California to recover damages for injuries received in an airplane crash in England allegedly due to defendant's negligent failure to properly maintain, repair and inspect the aircraft. The defendant maintained two offices in California; employed 27 persons within the state; made purchases locally of at least $1,000,000 a year; maintained a local bank account for its local payroll; and owned four automobiles.

The latest California cases we have found on this subject seem to consider the question of "doing business" within the meaning of section 411 as synonymous with the power of the state to subject foreign corporations to local process. We refer to *Fielding* v. *Superior Court* (1952), 111 Cal.App.2d 490 [244 P.2d 968],[10] and *Iowa Mfg. Co.* v. *Superior Court* (1952), 112 Cal.App.2d 503 [246 P.2d 681].[11]

In the Fielding case, plaintiff, a local resident, was injured by defendant's product after purchasing it at retail. The defendant was a New York corporation which manufactured pharmaceuticals. It operated locally by contract with a wholesaler in California who agreed to act as defendant's "distributor" here. Defendant reserved title to the goods until sold by the local distributor to the retailer. It set the prices at which the distributor was to sell; required a monthly report of stock on hand; provided all advertising costs. It maintained no local office and its officers came here only twice. The distributor managed his own sales force, distributed other manufacturer's products, collected all accounts, and was stated to be an independent contractor in the contract with the defendant.

On the basis of these facts the court considered the question to be whether the defendant was doing business "within the

---

[9] A petition for hearing by the Supreme Court was denied, 107 Cal. App.2d 501.

[10] A petition for hearing by the Supreme Court was denied, 111 Cal. App.2d 497. A petition for review by the U. S. Supreme Court was denied, 344 U.S. 897 [73 S.Ct. 277, 97 L.Ed. ——].

[11] A petition for hearing by the Supreme Court was denied, 112 Cal. App.2d 507.

meaning of the Corporations Code and to the extent that assumption of jurisdiction over them is consistent with due process.'' (P. 494.) In holding that the trial court erred in granting a motion by defendant to quash service, the reviewing court said ''The essence of doing business is that the corporation is present within the state sufficiently to constitute it just and equitable that it be amenable to process within the state.'' In the Iowa Mfg. Company case, the same test was used. (112 Cal.App.2d 503, at 506.)

This review of the decisions of our courts indicates that the expression ''doing business in this state,'' as used in section 411 of our Code of Civil Procedure (a term not defined by the statute), reflects the changing concept of ''doing business'' as it has evolved over the years, and as it continues to evolve, through the decisions of the federal courts interpreting the due process clause and applying it to new and developing situations from time to time. As one law writer expresses it, ''although the decisions as to jurisdiction over foreign corporations depend in the first instance upon the construction of statutes providing for service of process this statutory interpretation is usually keyed to constitutional interpretation. Thus, an extension of constitutional power may be reflected in the cases without the enactment of new legislation.'' (Growth of the International Shoe Doctrine, 16 Univ. of Chic. L.Rev. [1949] 523, at 525.) In other words, ''doing business'' enlarges to the extent that the federal Constitution permits it to enlarge.

This concept, it would appear, is reflected in *West Publishing Co.* v. *Superior Court, supra,* 20 Cal.2d 720, decided in 1942, prior to the rendition of the decision in the International Shoe case. The West Publishing Company case involved an action which the state had brought against that company in our superior court for the recovery of taxes imposed by the California Use Tax Act. The company sought a writ of prohibition to restrain the superior court from proceeding in the action, claiming lack of jurisdiction over the company, a foreign corporation. In rejecting that claim our Supreme Court made the following significant observations concerning the concept of ''doing business'' in that connection: ''Whatever the form of a particular statute authorizing service of process upon the agent of a foreign corporation which has not complied with the qualifying laws of a state, it is a fundamental requisite under the federal Constitution that the corporation shall be 'doing business' in the jurisdiction where the

service is made to sustain its validity. [Citations.] Formerly the theory upon which the courts of a state assumed jurisdiction of a foreign corporation carrying on business within its borders was that of implied consent to such jurisdiction. [Citations.] The abandonment of this 'consent theory' in favor of the 'corporate presence theory' was foreshadowed in *St. Louis Southwestern R. Co.* v. *Alexander,* 227 U.S. 218 [33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas. 1915B 77]. The latter doctrine was summarized by Mr. Justice Brandeis in *Philadelphia & Reading R. Co.* v. *McKibbin,* 243 U.S. 264 [37 S.Ct. 280, 61 L.Ed. 710], as follows: 'A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state the process will be valid only if served upon some authorized agent.' The determination of this jurisdictional question 'is often a matter of great difficulty and extreme nicety. No all-embracing rule as to what is doing business has been laid down.' [Citation.] In *Tauza* v. *Susquehanna Coal Co.,* 220 N.Y. 259 [115 N.E. 915, 917-918], the late Judge Cardozo commented upon the criterion of corporate presence in this connection as follows: 'If in fact it [the corporation] is here, if it is here, not occasionally or casually, but with a fair measure of permanence and continuity, then, whether its business is interstate or local, it is within the jurisdiction of our courts,' citing *International Harvester Co.* v. *Kentucky,* 234 U.S. 579 [34 S.Ct. 944, 58 L.Ed. 1479.] 'But there is no precise test of the nature or extent of the business that must be done. All that is requisite is that enough be done to enable us to say that the corporation is here.' As was said in *International Harvester Co.* v. *Kentucky, supra,* each case must depend upon its own facts.'' (Pp. 726-727.)

Our Supreme Court, in effect, extended these observations to include the International Shoe doctrine, in the later case of *West Publishing Co.* v. *McColgan* (1946), 27 Cal.2d 705, 713-715 [166 P.2d 861]. The court concluded that part of its discussion with this comment: "The court [in the International Shoe case] held that the State of Washington had constitutional power to impose the tax and to subject appellant to suit to recover it, and concluded its opinion with the statement quoted above that '. . . The activities which establish its "presence" subject it alike to taxation by the state and to suit to recover the tax.' " (P. 715 of 27 Cal.2d.)

This review of the decisions of our Supreme and appellate courts persuades us that Ethicon's business activities in this state make it amenable to the process and jurisdiction of our superior court if those activities furnish a proper basis therefor under the due process clause of the Fourteenth Amendment.

The inquiry starts with a consideration of the "mere solicitation" rule enunciated, in 1906, in *Green* v. *Chicago, B. & Q. R. Co.,* 205 U.S. 530 [27 S.Ct. 595, 51 L.Ed. 916]. Green brought the action in the Circuit Court of the Eastern District of Pennsylvania, to recover damages for injuries allegedly incurred in Colorado through the negligence of the railway company, an Iowa corporation. Upon motion of the company, the circuit court held that service of process was insufficient because the defendant was not doing business in Pennsylvania. The Supreme Court affirmed. The defendant had no tracks east of Chicago. It rented an office and employed an agent, with several assistants, in the Pennsylvania district. "The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line . . . He sold no tickets and received no payments for transportation of freight. When a prospective passenger desired a ticket, and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order, which gave to the applicant, upon his arrival at Chicago, the right to receive from the Chicago, Burlington and Quincy Railroad a ticket over that road. Occasionally he sold to railroad employees, who already had tickets over intermediate lines, orders for reduced rates over the defendant's lines. In some cases, for the convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's lines, he gave in exchange therefor bills of lading over the defendant's line. In these bills of lading it was recited that they should not be in force until the freight had been actually received by the defendant." (P. 533.) This was deemed the conduct of business which was merely incidental and collateral to the carriage of freight and passengers and the operation of a railroad therefor, the main purposes for which the defendant was incorporated. "The business shown in this case was in substance nothing more than that of solicitation. Without undertaking to formulate any general rule defining what transactions will constitute 'doing business' in the sense that liability to service is incurred, we think that

this is not enough to bring the defendant within the district so that process can be served upon it." (Pp. 533-534.)

The "mere solicitation" rule announced in the Green case has been considerably modified, although not expressly withdrawn, by later decisions of the Supreme Court. This is pointedly reflected in various decisions of the Circuit Courts of Appeals in recent years. Among them are these: *Frene* v. *Louisville Cement Co.* (Dist. of Columbia, 1943), 134 F.2d 511, 513-517 [146 A.L.R. 926], opinion by Justice Rutledge; *Kilpatrick* v. *Texas & P. Ry Co.* (2d Circ., 1948), 166 F.2d 788, 790-791, opinion by Judge Learned Hand, certiorari denied in 335 U.S. 814 [69 S.Ct. 32, 93 L.Ed. 369].

In the Frene case, Justice Rutledge, after criticizing the mere solicitation rule, said "But it is not necessary to take the final step in repudiation in this case, since the facts are sufficient to bring it within the 'solicitation plus' rule." (P. 517 of 134 F.2d.) A critical comment on the "mere solicitation" rule and a good exposition of the "solicitation plus" rule are given in *Moore* v. *Atlantic Coast Line R. Co.* (E.D. Pa., 1951), 98 F.Supp. 375. The "solicitation plus" rule was used in *Snyder* v. *J. G. White Engineering Corp.* (S.D., N.Y., 1945), 60 F.Supp. 789; *Loken* v. *Diamond T Motor Car Co.* (1943), 216 Minn. 223 [12 N.W.2d 345]; and *Continental Conv. & Show Management* v. *American Broadcast. Co.* (1950), 230 Minn. 217 [41 N.W.2d 263].

A number of recent decisions applying the International Shoe doctrine, have treated solicitation, plus very little else, as a sufficient business activity to satisfy the requirements of due process. (See *Lasky* v. *Norfolk & W. Ry. Co.* (6th Circ., 1946), 157 F.2d 674; *French* v. *Gibbs Corp.* (2d Circ., 1951), 189 F.2d 787; *Willett* v. *Union Pac. R. Co.* (N.D. Ohio, 1948), 76 F.Supp. 903; *Bonesteel* v. *Steelco Stainless Steel* (N.D. Ohio, 1950), 97 F.Supp. 985; *Star Elkhorn Coal Co.* v. *Red Ash Pocahontas Coal Co.* (E.D. Ky., 1951), 102 F.Supp. 258; *Allegue* v. *Gulf & South American S. S. Co., Inc.* (S.D., N.Y., 1952), 103 F.Supp. 34; *Ronson Art Metal Works* v. *Brown & Bigelow, Inc.* (S.D., N.Y., 1952), 104 F.Supp. 716, 105 F. Supp. 169, affirmed in 199 F.2d 760; *Ott* v. *Hudnut Sales Co.* (D.Colo., 1952), 107 F.Supp. 919; *State* v. *Winstead* (Idaho, 1945), 66 Idaho 504 [162 P.2d 894]; and *McCaskell Filters, Inc.* v. *Goslin-Birmingham Mfg. Co.* (1948), 81 N.Y.S.2d 309.)

Concerning "solicitation," we deem the following dictum of the United States Supreme Court significant: "In view of

the ruling in *International Shoe Co.* v. *Washington, supra,* we put aside any suggestion that 'solicitation,' when conducted regularly and continuously within the state, so as to constitute a course of business, may not be 'doing business' just as is the making of delivery, at any rate for the purpose of focusing a tax which in other respects would be sustainable.'' (*Nippert* v. *Richmond* (1945), 327 U.S. 416, 426 [66 S.Ct. 589, 90 L.Ed. 760, 162 A.L.R. 844].)

Three recent decisions involved factual situations similar in many respects to those presented in our case.

*Green* v. *Equitable Powder Mfg. Co.* (W.D. Ark., 1951), 99 F.Supp. 237, was an action for injuries resulting from the sale by Equitable of a defective blasting cap manufactured by defendant Olin Industries, Inc., a foreign corporation. Olin's motion to quash the service of summons was denied. Olin regularly employed various representatives who called on distributors of its products in Arkansas but took no orders from the distributors. Their chief business was the promotion of sales by creating good will and confidence of the public in the value and worth of Olin's products. A division sales manager had his office in Tennessee. His district included Arkansas. He often made trips to Arkansas and called upon persons and firms in an effort to promote the business of Olin. Some of Olin's representatives put on demonstrations of the power and velocity of firearms and ammunition. Olin was maintaining a recreational facility, having leased several hundred acres of land, using it as a place for the shooting of migratory game birds. During the duck season, present and prospective customers and personal friends were there entertained, to promote good will for Olin. No sales were attempted during the visit of any such persons. ''Under these facts, it can not be said that the sale of the alleged offending blast cap . . . and its use by plaintiff was not an incident to the activity and service of the defendant, its agents, servants and employees.'' (P. 245.) The court considered the due process requirements as enunciated in the International Shoe case. In applying that test it said: ''In the instant case, the activities of the defendant, Olin Industries, Inc., have not been merely casual or isolated. They have been systematic and carried on with one end in view, the promotion and increase of the sales of its products to consumers in Arkansas and, while the sale of certain products may have been stressed more than others, yet all of the activities were conducted with one purpose in view. The Olin Industries, Inc., needs no

advice from any court on how to successfully operate a business. Their business acumen has dictated their policy and their contacts in the State of Arkansas, and such contacts and conduct must have been profitable else they would have been abandoned and not continued. If it was not too inconvenient for the defendant to create and maintain these contacts in the state, it would seem logical that it would not be extraordinarily inconvenient for it to be required to defend the plaintiff's alleged cause of action since the use of its product allegedly produced the injury." (P. 246.)

In *Taylor* v. *Klenzade Products* (1952), 97 N.H. 517 [92 A.2d 910], the court found that the defendant's activities rendered it subject to the jurisdiction of the court and made it reasonable and just to require defendant to stand suit in New Hampshire. Defendant, a Wisconsin corporation, marketed its products in New England through distributors, but never made a direct sale to customers in New Hampshire. Goods purchased by the distributors were warehoused by them. Defendant employed a local representative, and was reimbursed by one of the distributors to the extent of one-half of the representative's compensation. The duties of this representative were to promote the sale of defendant's products; assist dealers in any problems relating thereto; establish new dealers; service the defendant's products in use by customers so that dissatisfaction would be avoided and demand encouraged; and generally to stimulate or create the demand for defendant's products in New Hampshire, Vermont and northern New York. He spent 60 per cent of his time in New Hampshire. Half of this time he devoted to soliciting orders and half to the servicing of customers of local dealers. "Thus while the actual sales made in New Hampshire were not those of the defendant, the defendant was not content to leave to the distributors the creation of the demand which made them a profitable outlet. The defendant enjoyed the advantages of its own representative in the field. His efforts likewise benefited the distributors, but the defendant's motive is not to be considered wholly altruistic. Benefit to them was benefit to the defendant, and since they were exclusive distributors, unless sales could be made through them, no sales would be made." (Pp. 912 and 913.) The court concluded that "this activity was of such a character as to make it reasonable and just to subject the defendant to the jurisdiction of the courts of this state." (P. 913.)

In *Polizzi* v. *Cowles Magazines Inc.* (5th Circ., 1952), 197 F.2d 74, the defendant, a foreign corporation, was the publisher of a national magazine. The suit was brought in a Florida state court and transferred to the federal district court in that state. That court dismissed the action for want of jurisdiction on the ground that defendant was not doing business there. The Court of Appeals affirmed. The defendant had no office in Florida; had not qualified to do business there; had no bank account or books or records there, nor any telephone listing. The magazine was distributed to retailers by independent wholesalers. Deliveries to individual subscribers were made by mail. Half of such subscriptions were procured through direct mail. The other half of the subscriptions were obtained by solicitation, the greater number by employees of agencies which operated out of New York or Philadelphia. Defendant had one representative, Briardy, who covered an assigned area, including Florida. He traveled regularly, checked retail outlets to ascertain conditions, made sure that defendant received proper positions on the newsstands and in general obtained the most efficient sale possible. He was described as a promotion and complaint man, with no authority to commit the defendant to any expenses except his own traveling expenses. The court did not consider that the activities of Briardy were such as to subject the defendant to suit in Florida. Judge Russell dissented, saying, "I think the authorities relied upon for reversal require that result since, in my opinion, the facts present show that the activities of the defendant (circulation and sale and the promotion thereof) amounted to 'doing business' within the State of Florida; the injury claimed, if existent, is connected with such activities . . ." (P. 77.) October 20, 1952, the Supreme Court granted Polizzi's petition for a writ of certiorari. (344 U.S. 853 [73 S.Ct. 94, 97 L.Ed. ——].)

We conclude that Ethicon's activities constitute "doing business in this state" within the meaning of our statute and to the extent that assumption of jurisdiction over it is consistent with due process; that there is afforded to both parties a greater amount of justice by allowing suit in this state rather than requiring it elsewhere; and that the order appealed from should be reversed.

A few procedural points remain to be considered. Ethicon claims we should assume that the trial court rejected all statements appearing in the affidavits presented by the plaintiff and that we, therefore, must exclude those statements

from our consideration upon this review. That is not the law. It is true that the record must be viewed most favorably to the respondent on conflicting affidavits. All conflicts must be resolved in favor of the respondent. However, uncontradicted and unimpeached testimony cannot *arbitrarily* be disregarded. (See *Mantonya* v. *Bratlie,* 33 Cal.2d 120 [199 P.2d 677]; *Dobson* v. *Dobson,* 86 Cal.App.2d 13 [193 P.2d 794].) The portions of plaintiff's affidavits which we have considered are quite consistent, indeed harmonious, with Ethicon's general description of its sales promotion work. It is more reasonable to assume that the trial judge did not reject those consistent statements but concluded they did not token activities of such a kind and extent as would satisfy the jurisdictional requirements of due process. He well may have done so. He made his decision in September, 1951, prior to the rendition of the decisions in *Fielding* v. *Superior Court, supra,* 111 Cal.App.2d 490, *Iowa Mfg. Co.* v. *Superior Court, supra,* 112 Cal.App.2d 503, and similar recent decisions in other jurisdictions.

Ethicon claims the record upon the motion to quash would justify a finding that Ethicon made no sale or warranty to plaintiff; hence, that Ethicon is not liable to plaintiff in warranty. That has reference to but one count of the complaint and to issues which may develop if and when Ethicon answers the complaint, not to the issues presented upon Ethicon's special appearance in its endeavor to quash service of summons. We cannot assume that plaintiff understood he was trying the case on the merits when he submitted affidavits in opposition to the motion to quash. Nor is there any basis for assuming that the trial judge considered that he had any such issue before him.

The order appealed from is reversed.

Peters, P. J., and Bray, J., concurred.