**TOOTHILL v. RAYMOND LABORA-
TORIES, Inc.**

Civ. No. 11889.

United States District Court
E. D. New York.

Oct. 16, 1951.

David Tepp, White Plains, N. Y., for plaintiff.

Mendes & Mount, New York City, (Brendan C. Kelly, New York City, of counsel), for defendant.

GALSTON, District Judge.

The defendant, appearing specially, has moved for an order vacating the service of the summons on this defendant, and to dismiss the complaint.

The plaintiff is a resident of the State of Connecticut, and jurisdiction is sought on the ground of diversity of citizenship, since, as she alleges, the defendant is a corporation organized under the laws of the State of Minnesota, having its principal place of business in the City of St. Paul, Minnesota. She alleges on information and belief that the defendant was engaged in business in the City and State of New York, and maintained offices and places for the transaction of its business in the City and State of New York, and within the jurisdiction of the Eastern District, and a representative for receipt of service of process.

It is alleged that the defendant is the manufacturer of an article known as "Rayette Special Occasion Cold Wave Kit" for distribution and sale in interstate commerce. The preparation is intended to be rubbed, sprinkled, sprayed or otherwise applied to the hair and head of individuals for beautifying, promoting attractiveness or altering the appearance of the person of the user. Plaintiff alleges that on July 12, 1945 she maintained a beauty parlor business in the City of Bridgeport, Connecticut, and that on or about that day the defendant sold to the plaintiff its preparation, Rayette Special Occasion Cold Wave Kit. In the course of her duties as beautician, she used defendant's product and applied it upon some of her patrons. She claims that as a result of such use she was made sick and disabled.

From the supporting affidavits of the defendant it appears that the summons was served on one Harry H. Robins. Robins sets forth in his affidavit that he resides in Great Neck, Long Island, New York; that he is employed by the defendant as Eastern Territory Sales Manager, and that his area of employment includes the States of New York, New Jersey, Pennsylvania, Connecticut, Massachusetts, Rhode Island, Maine, New Hampshire nad Vermont. There are three other persons employed by the defendant to work under Robins, and their activities are in the same area. Robins alleges that the defendant does not now have on file, and never did have on file, a certificate to do business, with the Secretary of State of the State of New York; and is not authorized to do business in the State of New York, and has not designated any person in the State of New York to accept service of process. Moreover, it has no offices, factories or warehouses located in the state. It pays no occupancy tax, franchise tax or sales tax to the City or State of New York.

From the Robins affidavit it would appear that his authority is limited solely to soliciting orders from dealers, distributors and jobbers, and that any orders that he receives are subject to the approval of the defendant at its place of business in St. Paul. He is not authorized to negotiate any contracts on behalf of the defendant in the State of New York, and no other person has such authority within the State. He had no authority to make collection of payments from dealers. The customers are billed directly from the defendant's office at St. Paul, and make remittances directly to the defendant's office at St. Paul. Robins had no authority to adjust any claims, or to make any decisions with reference to contracts or other matters. The defendant avers that no books or records are kept by the defendant within this state. It owns no property of any description within the state. The salary of Robins and his expenses, as well as the salaries and expenses of the three demonstrators who work under his supervision, are paid from the home office of the defendant.

On August 24, 1951 an unknown person called to see him in his apartment and served him with summons and complaint. He told the assistant marshal that he had no authority to accept such summons and complaint, and nobody else had any such authority. His affidavit concludes with allegations relating to the alleged injuries of the plaintiff. It appears therefrom, as he alleges on information and belief, that the defendant, Raymond Laboratories, never sold any of its product directly to the plaintiff, and that her purchases were made from the Liberty Laboratories, an independent dealer and distributor located in Bridgeport, Connecticut. Corroborating the averments of the Robins affidavit is the affidavit of Mark L. Arend, President of the defendant.

The question to be determined on this motion, then, is whether the defendant was "doing business" in the State of New York, and if so whether Robins was authorized to accept service of process.

The plaintiff has submitted an affidavit by Frank J. Mahony, an attorney associated with the plaintiff's attorney, in which he avers that for several years defendant maintained and operated an office in the Borough of Manhattan, and maintained a large staff for the transaction of business in and about the metropolitan area, though

there is no averment that the defendant had such office at the time of the occurrence of which the plaintiff complains.

Whether a foreign corporation is "doing business" in a state so as to make it amenable to service of process has been the subject of extended examination and discussion in many cases. Despite the innumerable decisions on the question, however, no single test or general rule seems to have been established which will furnish the answer. "Each case depends upon its own facts." People's Tobacco Co., Ltd., v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 235, 62 L.Ed. 581.

In the recent case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Supreme Court stated that courts will regard a corporation as "present" within the state where they deem the activities of the corporation within the state sufficient to satisfy the demands of due process. The court then stated 326 U.S. at page 317, 66 S.Ct. at page 158: "Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there."

In reviewing earlier decisions in the federal courts, the Supreme Court indicated that, under these decisions it was required that a nonresident corporation's activities must be "substantial", "continuous", and "regular", as distinguished from "casual", "single" or "isolated" acts, to constitute its "doing business".

In the course of its opinion, the court declared that in determining whether the contacts of the corporation with the state of the forum were such as to make it reasonable to require it to defend the particular suit which is brought there, an "estimate of the inconveniences" which would result to the corporation from a trial away from its "home or principal place of business" is relevant. This "balancing of the conflicting interests involved," has been recognized by the Court of Appeals of this circuit as having effected a change in the scope of the inquiry to determine the question of what constitutes "doing business". See Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184, 185–186, certiorari denied, 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531; Kilpatrick v. Texas & P. Ry. Co., 2 Cir., 166 F.2d 788, 790–791, certiorari denied, 335 U.S. 814, 69 S.Ct. 32, 93 L.Ed. 369; Bomze v. Nardis Sportswear Inc., 2 Cir., 165 F.2d 33, 35.

In the case at bar, however, the affidavits submitted on this motion indicate that the extent of the defendant corporation's "doing business" in the State of New York is the mere solicitation of orders through an "Eastern Territory Sales Manager", whose territory includes New York, New Jersey, Pennsylvania and the New England States. The defendant carried no stock of merchandise within the state, and no shipments of merchandise were made to its customers from anywhere within the state.

The soliciting of business by a foreign corporation without other activities has been held insufficient to subject the corporation to the service of process. Green v. Chicago B. & Q. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; People's Tobacco Co., Ltd. v. American Tobacco Co., supra. See also Lauricella v. Evening News Pub. Co., D.C., 15 F.Supp. 671; Smith v. Louisville & N. R. Co., D.C., 90 F.Supp. 189.

The International Shoe Co. case, supra, is distinguishable from the case at bar. In the first place, the opinion of the Court in that case points out that the facts as found by the Supreme Court of Washington disclosed that "there were sufficient additional activities shown to bring the case within the rule frequently stated, that solicitation within a state by the agents of a foreign corporation plus some additional activities there are sufficient to render the corporation amenable to suit". 326 U.S. at page 314, 66 S.Ct. at page 157, 90 L.Ed. 95. Secondly, the suit brought there was to enforce an obligation arising out of the corporation's activities within the state. In this connection the Court stated as follows: "But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the

benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, *so far as those obligations arise out of or are connected with the activities within the state,* a procedure which requires the corporation to respond to a suit brought *to enforce them* can, in most instances, hardly be said to be undue. * * *" 326 U.S. at page 319, 66 S.Ct. at page 160. (Emphasis added.)

In the instant case, the injury for which damages are sought arose out of activities of the defendant which occurred outside of the State of New York. This fact is significant, not only in distinguishing the International Shoe Co. case, but also with respect to the concept of the balancing of conveniences referred to earlier. In Kilpatrick v. Texas & Pacific Ry. Co., supra, the Court of Appeals stated that the issues involved in estimating the inconveniences involved were indistinguishable from those which determined a plea of forum non conveniens. In Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, the Supreme Court indicated that factors of public interest should be considered in applying the doctrine of forum non conveniens. The Court, 330 U. S. at pages 508–509, 67 S.Ct. at page 843, stated: "Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. * * * There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

Moreover, it appears from the affidavit of Robins that the defendant never sold any of its products directly to the plaintiff. She purchased the defendant's products through an independent dealer located in Bridgeport, Connecticut.

 On balance, therefore, it must be concluded that on the facts presented here the defendant corporation cannot be regarded as "doing business" in New York so as to subject it to the jurisdiction of this court in this action.

In view of the foregoing, therefore, the defendant's motion to vacate the service of summons and to dismiss the complaint is granted. Settle order on notice.