Robert W. KENNY, Plaintiff,

v.

ALASKA AIRLINES, Inc., et al., Defendants.

No. 16979.

United States District Court S. D. California, Central Division. June 13, 1955.

# 840

Theodore R. Coomber and J. Howard Sullivan, Los Angeles, Cal., for plaintiff.

Edward W. Allen, Stuart G. Oles, Seattle, Wash., and McLean, Salisbury, Petty & McLean, Los Angeles, Cal., for defendant, Alaska Airlines Inc.

JAMES M. CARTER, District Judge.

■ This case presents the recurring problem of solicitation as "doing business." We plowed the solicitation field in Perkins v. Louisville & N. R. Co., D.C. Cal.1951, 94 F.Supp. 946, and in deciding that the foreign corporation was doing business in California and subject to the jurisdiction of a federal court, we held state law was controlling as to what constitutes "doing business." But that case was a diversity case, removed from the state court. On removal of a diversity case to a federal court, unless the state court had jurisdiction over the defendant, none thereafter exists in this court. Employers Reinsurance Corp. v. Bryant, 1937, 299 U.S. 374, 381–382, 57 S.Ct. 273, 81 L.Ed. 289; Hassler, Inc., v. Shaw, 1926, 271 U.S. 195, 46 S.Ct. 479, 70 L.Ed. 900; Cyc. of Fed. Procedure, 3rd Ed. § 3.11, p. 201–2.[1]

The present action was *commenced* in this court under its diversity jurisdiction. It raises the interesting problem of whether a foreign corporation engaged in operating an air line, elsewhere than in California, is doing business in this district solely because passenger tickets are sold in this district by other air lines and ticket agencies, providing transportation in this district by such other air lines and *connected passage on defendant's air line on routes outside this district.* We again consider the "solicitation—doing business" problem, this time in an action originally filed in this court and with particular attention to the question above stated.

■ Plaintiff Kenny, owner of ten shares of stock of defendant, Alaska Airlines Inc., seeks to enforce certain pro-

---

1. Likewise, unless the state court had jurisdiction over the subject matter, no jurisdiction exists in the federal court on removal. Dunn v. Cedar Rapids Engineering Co., 9 Cir., 1945, 152 F.2d 733.

prietary rights which he conceives arise out of and are incident to such ownership. These alleged rights, are the creatures of the law under which the defendant was incorporated, the Territory of Alaska.

The facts of the complaint outline part of the history of Alaska Airlines Inc., (hereafter referred to as Alaska), from 1942. Certain transactions are described, involving the acquisition by Alaska of the business and assets of certain competing air carriers. The transactions are described as the product of the claimed fraud of one, R. W. Marshall, who is alleged to be the dominant stockholder and director of the corporation. As a result of this fraud, plaintiff asserts that he has been damaged by the issuance of watered stock and said R. W. Marshall has been enriched at his expense.

Kenny alleges that it is "impracticable" to bring a derivative stockholder's suit under Sec. 803, Corporation Code of California, or under Rule 23(b) Fed.Rules Civ.Proc. 28 U.S.C.A.; and that he "elects to bring this action to protect and enforce his personal rights incident to stock ownership and on behalf of other stockholders who may care to join him in this action." [2]

Kenny demands, among other things; an accounting to him by the corporation of all corporate transactions since 1942; nullification of stock issues set forth in the complaint; cancellation of entries incident thereto on the corporate books; reference of the matter to a master to determine the profits made by said Marshall and a money judgment in favor of the corporation in such sum if any; and finally, an order to Alaska to distribute such proceeds as dividends.

Alaska has not appointed an agent for service of process in California as provided for by the California statute. The only process which has issued from this court was served upon the Secretary of State of California, under Rule 4(d) (7) F.R.C.P., which incorporates by reference "the manner prescribed by the law of the state in which the service is made for the service of summons or other like process" in state actions.

Alaska moves, (1) to quash service of summons and to dismiss the action for insufficiency of service of process; (2) to dismiss the action for lack of jurisdiction over the person of defendant; and (3) to dismiss the action on the ground of improper venue. The first two motions are based generally upon the contention that Alaska was not doing business in California where this court sits.

Alaska is incorporated under the laws of the Territory of Alaska, and is an air transport company engaged in carrying passengers and mail. All of its flight routes use airways in and over Alaska, Washington, Oregon and Canada. It has terminals in Alaska, Washington and Oregon but none anywhere else. It transacts its principal business only in these jurisdictions. The principal offices of the corporation are located in Seattle, Washington.

Alaska has entered into contracts with ticket brokers, agents and travel bureaus throughout North America for the sale of tickets entitling the purchaser to passage in its aircraft over the routes it operates. These ticket outlets are compensated on a commission basis only. Some outlets are located in this district in the state of California. The defendant also has reciprocal interline agreements with at least two interstate airlines which operate within this district, whereby they sell connecting tickets on Alaska's Airlines and transport passen-

---

2. California Corp. Code, Sec. 834 and Rule 23(b) F.R.C.P. are very similar in the substance of their conditions for a stockholders suit. Kenny's complaint does not show compliance with either the code section or the rule. No motion to dismiss for failure to state a cause of action has been filed, and we do not consider whether Kenny may, by his other allegations, avoid compliance with such provisions, and state a cause of action.

gers as a connecting carrier over their routes, and for which they receive certain pro rata revenues. These latter carriers, United Airlines and Western Airlines, admittedly are present and doing business in California.

Alaska has no employees in California. It retains no one to adjust claims in the state. The sole activity carried on in California in its behalf is the sale of tickets for passage from points originating and terminating outside the state of California through either the ticket agencies or the connecting carriers.

Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193, at page 194, has become a leading case on the problem of "doing business." "There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? * * * If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt

violates" federal constitutional provisions.

Judge Learned Hand in Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 35, had succinctly stated the two questions as follows: "thus the first question is whether the service was valid under the New York decisions. If we conclude that it was not, of course the case ends; but, if we conclude that it was, there arises the second question: i. e. whether the service was valid under the Constitution."

## I

### Does state or "general" federal law apply

■ In determining whether a foreign corporation is doing business in a state, in a diversity action, should a court apply state law or "general" federal [3] law?

■ We note at the outset that district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between * * * Citizens of

3. We borrow the phrase "general law" from Prof. Moore (Moore's Federal Practice, 2d Edition, 1948, Sec. 4.25), who uses it in contrast to local or state law; and we use it for want of a better term. We have added the word "federal." We use the phrase *"general"* *federal law,* to cover those cases where particular reference is not made to the law of the state where the court sits but instead such local law is rejected, in solving the doing business problem. Such cases generally cite only federal court cases and particularly those analysing U. S. Supreme Court decisions concerned with the federal due process question. Others cite federal cases which in turn were based on the varying laws of particular states, without noting this fact.

Although we use the term, we do not believe there is any "general" federal law, to be applied to our problem. "There is no federal general common law." Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188. Haeger Potteries, Inc., v. Gilner Pot-

teries, D.C.Cal.1954, 123 F.Supp. 261, at page 264 and cases cited. There are exceptions to such a broad statement, as e. g. "criminal procedure is governed * * * by federal statutes and *decisions* of the federal courts", United States v. Murdock, 284 U.S. 141, 150, 52 S.Ct. 63, 65, 76 L.Ed. 210; criminal evidenciary rules in the federal courts "are governed by common-law principles as interpreted and applied by the federal courts in the light of reason and experience." Wolfle v. United States, 291 U.S. 7, 12, 54 S.Ct. 279, 78 L.Ed. 617. "In the exercise of its supervisory authority over the administration of criminal justice in the federal courts," the U. S. Supreme Court, "has, from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions. * * * *" McNabb v. United States, 1943, 318 U.S. 332, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819; Rule 26, Rules of Criminal Procedure, 18 U.S.C.A., but obviously such exceptions are not applicable to our problem.

different States". 28 U.S.C.A. § 1332(a) (1). This is jurisdiction over the *subject matter* of the case. 28 U.S.C.A. § 1391 provides for *venue* in diversity cases, and does not concern *jurisdiction* over the person.

Barrow Steamship Company v. Kane, 1898, 170 U.S. 100, at page 111, 18 S.Ct. 526, at page 530, 42 L.Ed. 964 is still the law when it states, "The jurisdiction so conferred upon the national courts cannot be abridged or impaired by any statute of a state." And we accept Judge Biggs addition thereto of " 'or of any decision by a state tribunal' ", Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, 545 (concurring opinion). But again, the jurisdiction considered is that of *subject matter*.

When we consider *jurisdiction over the person*, a different problem is presented and this hornbook distinction must be borne in mind in considering our problem. The question of "doing business" and the "presence" of a foreign corporation in a state leads to a problem of jurisdiction over the person.

■ To further orient our precise problem, it should be noted that the *appointment* of an agent by a foreign corporation to receive service, whether voluntarily or under statutory compulsion, removes all question as to jurisdiction over the person where service is duly made on that agent. Mississippi Publishing Corp. v. Murphree, 1946, 326 U.S. 438, 443, 66 S.Ct. 242, 90 L.Ed. 185. Cyc. 3rd Ed. § 11.71; comment in 50 Harvard Law Review 1133, 1134. But in the case at bar, no agent was appointed and service was made on a statutory agent, the Secretary of State, pursuant to the state statute; no office or officer of the defendant was present in the state, nor were any managers or agents of any kind. Ours is purely a case of substituted service. There is not before us the problem of the scope of the authority or the capacity of the agent served, nor

whether notice to such agent is notice to the foreign corporation.

Specifically our problem is this—what law, state or "general" federal law, do we apply in determining if the corporation is doing business?

Rule 4(d) Rules of Civil Procedure, provides in part:—"Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: * * * (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant. * * * (7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

■ It will be noted that subdivision (7) of the Rule 4(d), F.R.C.P. in adopting state practice, provides that a summons may be served *"in the manner* prescribed by the law of the state * * *."* In considering this section, two alternatives suggest themselves, one, that the word "manner" apply solely to *how,* and *where, when* and upon *whom* the sum-

mons should be served under state practice. There is certainly no dispute that the rule goes this far.[4]

The second alternative and the one adopted by Judge Goodrich, though not discussed, in Pulson v. American Rolling Mill Co., supra, is that the word "manner" also includes the state's concept of doing business, which is a condition precedent under substituted service statutes for the service upon the state officer named in the statute. Thus, Judge Goodrich concludes that under Rule 4(d) (7), F.R.C.P., by its reference to manner of service provided for by state law, we look to state law for both the *who, how, where* and *when* of the service but also look to state law to determine whether or not the foreign corporation was doing business in the state, since unless it was doing business, this type of state service of summons cannot be used. We think it can be fairly said that the other cases which have cited and followed the Pulson case, or have independently reached the same conclusion as the Pulson case, based upon Rule 4(d) (7), F.R.C.P., have likewise relied upon the same concept used by Judge Goodrich, although without discussing it.

Though poorly indexed and considered in the treatises and digests, many cases have considered the problem of what law to apply to the question of doing business, and there is no uniformity of decision.[5] It is desirable therefore to classify the cases. Of the vast number of cases in the federal courts that have considered the problem of doing business, since April of 1938, when Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, was decided, probably the majority of the cases have launched into a discussion as to whether the foreign corporation was doing business in the state without consideration as to whether state or "general" federal law should be applied to the problem, and without consideration of the two questions presented as shown in the Pulson and Bomze cases, supra.

We have not attempted to gather or cite these cases. Most of them indiscriminately refer to various federal cases, some of which, upon analysis, are based upon state law and some on other federal cases. The various state concepts as to what constitutes doing business are at variance, some states being liberal and some strict in their interpretation of the doing business question.

We limit ourselves to those cases which have directly or indirectly considered our problem. An increasing number of cases

**4.** The cases are legion that under Rule 4 (d) (7), F.R.C.P. a federal court will look to the procedural requirements of the state *manner* of service,—the *who, how, where* and *when* of service. Gravely Motor Plow & Cultivator Co. v. H. V. Carter Co., Inc., 9 Cir., 1951, 193 F.2d 158, 159; Pan American Airways v. Consolidated Vultee Aircraft Corp., D.C.N.Y.1949, 87 F.Supp. 926, 931; Favell-Utley Realty Co. v. Harbor Plywood Corp., D.C.Cal.1950, 94 F.Supp. 96, 97–98 (applies California law to service, but not as to what constitutes "doing business.") Barnhart v. John B. Rogers Producing Co., D.C.Pa.1950, 9 F.R.D. 590; Hartsock v. Commodity Credit Corp., D.C.Iowa 1950, 10 F.R.D. 181, 183–184; Hall v. Gulf South Utilities, D.C.Miss.1951, 96 F.Supp. 351; Moore v. Atlantic Coast Line R. Co., D.C.Pa. 1951, 98 F.Supp. 375, 378. (But here the court declined to accept the state law as to what constituted "doing business"); Allegue v. Gulf & South American S.S. Co., Inc., D.C.N.Y.1952, 103 F.Supp. 34, 35.

**5.** The digests and texts are of little help in finding cases on this problem. They have made no separate category for cases raising the question as to whether in diversity cases, the concept of doing business is to be judged by state or general law. 3rd Cyc. in Sec. 11.71, comes closest. In note 87 it cites cases where federal courts will not follow state decisions. These cases practically all antedate the April 1938 decision in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. In notes 91 and 92 reference is made to service based on the state statute and cases are cited to the effect that state law will be followed.

since Erie have raised the question as to whether the court would apply state or "general" federal law. Moore's Federal Practice, 2d Ed. 1948, Sec. 4.25, states categorically: "Whether a foreign corporation or other business entity is doing business in a state is a matter of general, not local law" and cites several cases in support thereof. Moore makes no distinction between removed cases and cases originally filed in the district courts. However, all of the cases we have been able to find since 1938 which have been *removed* from state courts to federal courts on the *basis of diversity* and have discussed the problem have, applied state law. We list them below.[6] The correctness of this approach we discussed on the first page of this decision.

As to cases *originally filed in the federal courts* since 1938 under diversity jurisdiction which have considered the question as to whether state or "general" federal law applies to the problem of doing business, only a minority have applied "general" federal law. We list them in the margin.[7]

The majority of these cases have applied state law to the question of doing business.

### (1) *Decisions based on the Rules of Civil Procedure.*

The leading case, holding that the problem was controlled by the Federal Rules of Civil Procedure, is Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193. The court, speaking through Judge Goodrich (on assignment from the Third Circuit) said, at page 194:

"This case is brought solely on diversity grounds in a federal court sitting in Massachusetts. Rule 4(d) (7) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service of process on a foreign corporation is valid if made in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made. There being no federal statute applicable, and service having been attempted under Massachusetts procedure, the case is governed by the requirements for valid service in that state",

and then laid down the twofold test (1) using state law as to whether "the state [has] provided for bringing the foreign corporation into its courts" in such a case and (2) using federal law as to whether federal constitutional provisions are violated. The court then considers Massachusetts statute and case law concerning doing business by foreign corporations and states, " * * * we take the Massachusetts interpretation of a Massachusetts statute", and concludes that

6. Cases removed to the federal court based on Diversity, in which the federal court applied state law to the question of "doing business." Roark v. American Distilling Co., 8 Cir., 1938, 97 F.2d 297; Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 35; De Santa v. Nehi Corporation, 2 Cir., 1948, 171 F.2d 696, 699; Rosenthal v. Frankfort Distillers Corp., 5 Cir., 1951, 193 F.2d 137, 140; Davis v. Asano Bussan Co., 5 Cir., 1954, 212 F.2d 558; alienage case; same principles apply as in diversity case, at page 563, note 5; Fritchey v. Summar, D.C.Ark.1949, 86 F.Supp. 391; Perkins v. Louisville & N. R. Co., D.C.Cal.1951, 94 F.Supp. 946; Ericksson v. Cartan Travel Bureau, D.C.Md.1953, 109 F.Supp. 315; Forsgren v. Gillioz, D.C.Ark.1953, 110 F.Supp. 647; Pucci v. Blatz Brewing Co., D.C.Mo.1955, 127 F.Supp. 747.

7. Cases after April 1938, refusing to apply state law. Hedrick v. Canadian Pacific R. Co., D.C.Ohio 1939, 28 F.Supp. 257 (citing cases prior to Erie) service or agent; Leakley v. Canadian Pacific Express Co., D.C.Alaska 1949, 82 F. Supp. 906, 908, applies "federal" law. Does not discuss territory law; Pike v. New England Greyhound Lines, D.C. Mass.1950, 93 F.Supp. 669, 671; Ackerley v. Commercial Credit Co., D.C.N.J. 1953, 111 F.Supp. 92, 98–99 (service on an officer); General Electric Co. v. Masters Mail Order Co., D.C.N.Y.1954, 122 F.Supp. 797, 800.

the defendant is not subject to suit. The court therefore does not reach the federal constitutional question.

The cases applying state law to the "doing business" problem, in accord with, or following Pulson, where there was a substituted service, i. e. service on the state officer named in the statute,[8] or where service was made on an officer, manager or agent of the foreign corporation within the state,[9] are cited in the margin.

### (2) Decisions based on the Erie doctrine.

Other diversity cases originally filed in the federal court have said or inferred that they followed state law in dealing with the problem of "doing business," because of the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

In Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F.2d 147, 153, the court said such approach " * * * now appears to us to be the correct approach in cases where jurisdiction is based solely on diversity of citizenship, whether the cases are removed from the state court as in Rosenthal v. Frankfort Distillers Corp., supra, or filed originally in the federal court as in Pulson v. American Rolling Mill Co. supra. * * * "

The note following in the Lone Star case reads as follows:

"Since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and Angel v. Bullington, 330 U.S. 183, 192, 67 S.Ct. 657, 91 L.Ed. 832, it would seem that in both classes of cases the Erie rule is applicable on the question of whether a foreign corporation is doing business in a state in such manner as to subject itself to local jurisdiction. See Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541, 542, note 2; Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524."

Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, at page 542,

---

8. Cases applying state law; substituted service. Kelley v. Delaware, L. & W. R. Co., 1 Cir., 1948, 170 F.2d 195; certiorari denied 336 U.S. 939, 69 S.Ct. 742, 93 L.Ed. 1097. (No statement whether service on agent or substituted service) Steinway v. Majestic Amusement Co., 10 Cir., 1949, 179 F.2d 681, 18 A.L.R.2d 179; Albritton v. General Factors Corp., 5 Cir., 1953, 201 F.2d 138; Electrical Equipment Co. v. Daniel Hamm Drayage Co., 8 Cir., 1954, 217 F.2d 656; Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 1953, 201 F.2d 233; Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541; Schmidt v. Esquire, Inc., 7 Cir., 1954, 210 F.2d 908, 914, 916; Nichols v. Cowles Magazines, D.C.Mass. 1952, 103 F.Supp. 864, 865; Charles Keeshin, Inc., v. Gordon Johnson Co., D.C.Ark.1952, 109 F.Supp. 939; London's, Inc., v. Mack Shirt Corp., D.C. Mass.1953, 114 F.Supp. 883.

9. Cases applying state law; service on an agent. Schmikler v. Petersime Incubator Co., 1 Cir., 1949, 177 F.2d 983, 988; Canvas Fabricators, Inc., v. William E. Hooper & Sons, Inc., 7 Cir., 1952, 199 F.2d 485, 486; Robbins v. Benjamin Air Rifle Co., 5 Cir., 1954, 209 F.2d 173, 176; Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 1954, 212 F.2d 147, reverses Insurance Co. of North America v. Lone Star Package Car Co., D.C., 107 F.Supp. 645 as to Baltimore & Ohio; Isenberg v. Atlanta Coast Line R. Co., D.C.Mass.1949, 82 F.Supp. 927, 928; Doyle v. Southern Pacific Co., D.C.Mo.1949, 87 F.Supp. 974; Wadell v. Green Textile Associates, D.C.Mass. 1950, 92 F.Supp. 738, 741; Green v. Equitable Powder Mfg. Co., D.C.Ark. 1951, 99 F.Supp. 237; Allentown Record Co., Inc., v. Agrashell, Inc., D.C.Pa. 1951, 101 F.Supp. 790; Insurance Co. of North America v. Lone Star Package Car Co., D.C.Tex.1952, 107 F.Supp. 645, 654; Miller v. Tulsa Petroleum Co., D.C. Pa.1953, 117 F.Supp. 359; Convery v. Clairol, Inc., D.C.Pa.1954, 123 F.Supp. 29; Solt v. Interstate Folding Box Co., D.C.Pa.1954, 123 F.Supp. 376; General Electric Co. v. Central Transit Warehouse Co., D.C.Mo.1955, 127 F.Supp. 817, 821; Read v. Corbitt Co., D.C.Pa. 1950, 10 F.R.D. 125, 128. See: Cole v. Stonhard Co., D.C.N.Y.1952, 12 F.R.D. 508, 510.

quotes a pre-Erie decision, Kansas City Structural Steel Co. v. State of Arkansas, 1925, 269 U.S. 148, 150, 46 S.Ct. 59, 70 L.Ed. 204, as follows:

" 'We accept the decision of the Supreme Court of Arkansas as to what constitutes the doing of business in that state within the meaning of its own laws.' "

And followed this with a note on page 543 of 202 F.2d, stating in part,

"But in Angel v. Bullington, 1947, 330 U.S. 183, at page 192, 67 S.Ct. 657, at page 662, 91 L.Ed. 832, the Court said: 'Cases like [David] Lupton's Sons Co. v. Automobile Club [225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177] * * * are obsolete insofar as they are based on a view of diversity jurisdiction which came to an end with Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. That decision drastically limited the power of federal district courts to entertain suits in diversity cases that could not be brought in the respective State courts * * *. Of course, where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State. * * *' "

In Canvas Fabricators v. William E. Hooper & Sons Co., 7 Cir., 1952, 199 F.2d 485, at page 486, the court states:

"The primary contested issue is whether defendant was 'doing business' in the State of Illinois so as to be amenable to local process. * * * This being a diversity case, it can hardly be doubted but that the main question for decision is controlled by local law. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Kelley v. Delaware, L. & W. R. Co., 1 Cir., 170 F.2d 195. * * *"

We think that in diversity suits originally filed in the federal courts, the question of whether the foreign corporation is doing business or was present in the state, i. e. the question of jurisdiction over the person, is to be resolved by reference to the law of the state in which the federal district court sits.[10] Our conclusion is predicated upon the broad pronouncement of Justice Brandeis in Erie R. Co. v. Tompkins, 304 U.S. 64, at page 78, 58 S.Ct. 817, at page 822:

"Except in matters governed by the Federal Constitution or by acts

---

10. The general statement, appearing in many cases, that the sufficiency of process to maintain jurisdiction is a matter of federal law, Neset v. Christensen, D.C. N.Y.1950, 92 F.Supp. 78, 83; Zuber v. Pennsylvania R. Co., D.C.Ga.1949, 82 F. Supp. 670, 675; Goldey v. Morning News, 1895, 156 U.S. 518, 522, 15 S.Ct. 559, 39 L.Ed. 517; Mechanical Appliance Co. v. Castleman, 1910, 215 U.S. 437, 442, 30 S.Ct. 125, 54 L.Ed. 272, though correct, requires more to be said. Such bald statements, used in a diversity-doing business case, only beg the question.

In Uravic v. F. Jarka Co., 1931, 282 U.S. 234, at page 240, 51 S.Ct. 111, at page 112, 75 L.Ed. 312, Justice Holmes stated:

"It always is the law of the United States that governs within the jurisdiction of the United States, even when for some special occasion this country adopts a foreign law as its own."

and as Judge Biggs said in his concurring opinion in Partin v. Michaels Art Bronze Co., supra, 202 F.2d at page 545, "concededly, federal jurisdiction must be determined by federal law, albeit federal law in diversity cases calls for reference to the background of state law."

The same would be true, whether under Rule 4(d) (7), F.R.C.P. or the Erie doctrine, federal law adopts the law of the state. Thus, federal law applies, but by reference, state law becomes the governing federal law.

of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts."

The Supreme court said, in Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 109–110, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079, in referring to the Erie case,

"In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a nonresident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. And so, putting to one side abstractions regarding 'substance' and 'procedure', we have held that in diversity cases the federal courts must follow the law of the State as to burden of proof, Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196, as to conflict of laws, Klaxon Co. v. Stentor [Electric Mfg.] Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, as to contributory negligence, Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645.

And see Sampson v. Channell, 1 Cir., 110 F.2d 754, 128 A.L.R. 394. Erie R. Co. v. Tompkins has been applied with an eye alert to essentials in avoiding disregard of State law in diversity cases in the federal courts. A policy so important to our federalism must be kept free from entanglements with analytical or terminological niceties."

Erie R. Co. v. Tompkins, supra, and Gauranty Trust Co. of N. Y. v. York, supra, were followed by Angel v. Bullington, 1947, 330 U.S. 183, at page 191, 67 S.Ct. 657, at page 662, where the court said:

"The essence of diversity jurisdiction is that a federal court enforces State law and State policy" and, 330 U.S. at page 192, 67 S.Ct. at page 662, "What is more important, diversity jurisdiction must follow State law and policy. A federal court in North Carolina, when invoked on grounds of diversity of citizenship, cannot give that which North Carolina has withheld."

Then came Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. There a foreign corporation sued for a broker's commission in the United States district court in Mississippi. Holding that the foreign corporation was doing business in Mississippi without qualifying under state law, and applying Mississippi law, the district court found the contract for the broker's commission void. The circuit court on appeal, viewed Mississippi law as holding the contract as not void but only unenforcible in the Mississippi courts, and held it was enforcible in the federal diversity case. The Supreme court without deciding whether the contract was void or only unenforcible, held that if the contract was unenforcible in a Mississippi court, it was unenforcible in a federal court. It said, 337 U.S. at page 538, 69 S.Ct. at page 1237, "Angel v. Bullington in its alternative ground followed the view of Guaranty Trust Co.

of N. Y. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079, that for purposes of diversity jurisdiction a federal court is 'in effect, only another court of the State. * * * ' "

■ That our facts present the converse situation of Woods v. Interstate Realty Co., supra, and show instead, a resident suing a non-resident does not rob the principle just stated of its efficacy.

■ Our first reference then in determining the 'doing business' question, must be to the law as declared by the legislature and courts of the state of California. We apply state or local law under either the Pulson theory or under the Erie doctrine. We prefer to place reliance on the Erie doctrine. If we find the courts of the state would exercise jurisdiction we are presented with a purely federal question, testing whether such exercise of power offends due process of law.

## II

Is the defendant doing business in California, i. e. Does California provide for jurisdiction in personam over a foreign corporation under the facts of our case?

California law provides for the qualification with the Secretary of State, by a foreign corporation engaged in intrastate business, Corp.Code, §§ 6400–6410; and further provides for substituted service on the secretary of state if the corporation has not qualified and designated an agent for service of process and if no agent or officer can be found in the state upon whom to make service. Corp. Code, §§ 6501, 6502.

Corp.Code, § 6300 states, "This part [Section 6200–6804] does not apply to corporations engaged solely in interstate or foreign commerce." Corp.Code, § 6403 states: "A foreign corporation shall not transact intrastate business in this State until" it qualifies with the Secretary of State.

The Code of Civil Procedure, § 411, subd. 2, provides for the service of summons as follows: "If the suit is against a foreign corporation * * * doing business in this State; in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code."
Sec. 6500 provides for service on the designated agent or certain specified officers. Sections 6501 and 6502 heretofore referred to, provide for substituted service on the Secretary of State.

The apparent limitation in its statutes has caused California courts little concern. Fielding v. Superior Court, 111 Cal.App.2d 490, 496, 244 P.2d 968, 972; hearing by California Supreme Court denied; certiorari denied Westwood Pharmical Corp. v. Fielding, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 693, states: "Any distinction as to where, exactly, interstate commerce ends and local commerce begins seems to be largely immaterial in deciding the precise problem at hand. Whether the particular business of these corporations is denominated intra or interstate commerce does not change the fact that they are still doing business in his state." Iowa Mfg. Co. v. Superior Court, 1952, 112 Cal.App.2d 503, 506, 246 P.2d 681. See, "Suing Foreign Corporations in California," 5 Stanford Law Review 503, 511–13.

California is in the vanguard of jurisdiction committed to a liberal approach to the question of what constitutes "doing business" within the state. Jeter v. Austin Trailer Equipment Co., 1953, 122 Cal.App.2d 376, 386, 265 P.2d 130; hearing by California Supreme court denied. This case appears to be the most recent pronouncement upon this question by the intermediate tribunal of the state, and incidentally is the authority upon which the plaintiff bottoms his resistance to the motions of Alaska.

In this particularly well considered opinion of the California District Court of Appeals, Justice W. Turney Fox has reviewed the precedents of California as well as the constitutional limitation of

due process as applied to a foreign corporation doing business in the state.

We are particularly concerned with the California law as to what constitutes doing business, and only indirectly concerned with the California court's view on the federal due process question. We say "indirectly" because although we are not bound by the California courts interpretation of the federal due process question, the California view of what constitutes doing business is apparently as broad as the permissible limits of due process as interpreted by the California courts. In Jeter v. Austin Trailer Equipment Co., supra, 122 Cal. App.2d at page 387, 265 P.2d at page 137, the court said:

" * * * In Kneeland v. Ethicon Suture Laboratories, 118 Cal.App.2d 211, 221, 257 P.2d 727, 733, the court remarks that the 'latest California cases * * * seem to consider the question of "doing business" within the meaning of § 411 (Code of Civ. Proc.,) as synonymous with the power of the state to subject foreign corporations to local process.' Such power, as the International Shoe case [International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95] teaches, depends on the existence of sufficient continuous and substantial contacts with the state of the forum to make it just and reasonable under traditional concepts of fair play and justice to permit the state to assume jurisdiction. And, as the court in the Kneeland case continues, the concept of 'doing business' enlarges to the extent that the federal constitution permits it to expand through 'decisions of the federal courts interpreting the due process clause'. 118 Cal.App.2d at page 222, 257 P.2d at page 734. * * * "

In the Jeter case, Shirey, an independent contractor had been the sales representative in California for Austin, a foreign corporation, and Shirey's solicitation activities had been constant and regular and as a direct result of these activities there had been a flow of Austin's products into California. Austin kept merchandise in California, filled some of its orders from local stock and contributed on occasion to the payment of Shirey's business rental. The court held Austin was doing business in California and service on the Secretary of State was good. The court further stated, 122 Cal.App.2d at page 388, 265 P.2d at page 137:

"By way of recapitulation of the current state of the law under the evolving concept of the 'doing business' requirement, it is deducible from the cases that the essentials of due process are fully met, at least for purposes of amenability to local process and jurisdiction, if a foreign corporation maintains substantial contacts with a state through a course of regularly-established and systematic business activity, as distinguished from casual, isolated, or insubstantial contacts or transactions. The court must be astute to weigh the facts of the individual case to determine *whether the particular type of activity in, relation to, or nexus with, the forum is of such substance as will make it just and equitable to conclude that a corporation is 'doing business' in the sense required by the purpose at hand.*" (Emphasis added.)

We have the unenviable task of trying to decide what the California courts would hold on the question as to whether the facts in the case at bar constitute doing business in California. The California cases on doing business have been extensively reviewed in the Jeter case and it is interesting to note that in all of the cases cited therein except two, in which California courts held that the foreign corporation was doing business, there was in addition to other activities in certain of the cases, *a flow of goods*

*from the foreign corporation into California.* In the two cases in which this does not appear, there are facts which take the case far beyond the facts of the case at bar. In Boote's Hatcheries & Packing Co. v. Superior Court, 1949, 91 Cal.App.2d 526, 205 P.2d 31, a resident purchasing agent of the foreign corporation in California solicited business, advised poultry men on egg production, entered into contracts for the purchase of the eggs by the foreign corporation and supervised the packing and shipment of the eggs to Minnesota. There was here a flow of goods *from* California to the foreign corporation. In Koninklijke Luchtvaart Maatschappij v. Superior Court, 1951, 107 Cal.App.2d 495, 237 P.2d 297, a foreign corporation maintained a large technical staff in California in connection with its purchase in California of aircraft in excess of $1,000,000 per year; maintained a bank account from which it paid its employees, and maintained a ticket office with four employees soliciting passenger business in California.

In the case at bar, Alaska had no employees in California, maintained no office, and the only activity carried on in California was the sale of tickets over Alaska's lines, operating elsewhere than in California, the sales being made by either connecting air lines or independent ticket agencies paid on a commission basis. There was no flow of goods to or from California. Whether these facts would render it fair and just that the foreign corporation be held present in California,—whether they would provide the necessary *nexus* with the forum, would present a definite policy problem to the California courts.

The caveat of Justice Brandeis, in Philadelphia & Reading R. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710, would warrant consideration. He said, 243 U.S. at page 268, 37 S.Ct. at page 281:

"The defendant transacts no business there; nor is any business transacted there on its behalf, except in the sale of coupon tickets. Obviously the sale by a local carrier of through tickets does not involve a doing of business within the state by each of the connecting carriers. *If it did, nearly every railroad company in the country would be 'doing business' in every state.*" (Emphasis added.)

To the reference to railroads, there should be added that practically every steamship company and air line operating throughout the world would be doing business, and could be sued in the California courts, under such a concept of doing business.

The policy problem becomes further acute when the holding of California courts on two other related principles is considered.

1. The California courts in determining what constitutes "doing business" make no distinction between the activities of the employee or an agent as compared with the independent contractor acting for the foreign corporation;

"* * * whether those activities and contacts of the foreign corporation indigenous to the forum are carried on through an independent contractor working on a commission basis or by salaried agents, is not, standing alone, of controlling importance when the issue involved is amenability to local process. Thew Shovel Co. v. Superior Court, 35 Cal.App.2d 183, 95 P.2d 149; Fielding v. Superior Court, 111 Cal.App. 2d 490, 244 P.2d 968. 'The essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee, or in any other manner.' Fielding v. Superior Court, supra, 111 Cal.App.2d at page 494, 244 P. 2d [968] at page 971; Iowa Mfg. Co. v. Superior Court, 112 Cal.App. 2d 503, 506, 246 P.2d 681. * *" Jeter v. Austin Trailer Equipment

Co., supra, 122 Cal.App.2d at page 387, 265 P.2d at page 137.

2. California courts have held that the fact that the cause of action arose outside of the jurisdiction is immaterial and that the California courts are open for the trial of transitory actions without conflict with the laws or public policy of the state. Jeter v. Austin Trailer Equipment Co., supra, 122 Cal.App.2d at page 389, 265 P.2d 130; Koninklijke Luchtvaart Maatschappij v. Superior Court, supra, 107 Cal.App.2d at page 499, 237 P.2d 297; Schultz v. Union Pac. R. Co., 1953, 118 Cal.App.2d 169, 257 P.2d 1003.

Since practically every railroad, steamship and air line company sells continuation tickets routing the passenger over other lines which are operated by foreign corporations, the holding that such sales of tickets, even on a commission basis by independent contractors, constituted doing business by each of such foreign corporations in the State of California, would present a policy problem of such magnitude that we believe the California courts would hold that such ticket sale activities did not constitute doing business.

 Although California has stated that its courts are open to transitory actions, regardless of the fact that they arise outside of the state, California decisions (supra) also indicate that the question of whether it is fair or just to hold the foreign corporation present in the state and the foreign corporation's nexus with the cause of action will be considered in determining the ultimate question of doing business. It is now clear that a state court is not required by federal constitutional provisions to open its courts to such transitory actions. In Perkins v. Benquet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, the Supreme Court held that the due process clause neither compelled nor prohibited Ohio to open its courts to an action against a foreign corporation upon a cause of action arising outside of Ohio.

Accordingly, we find in various of the cases on the "doing business" problem, a consideration as to whether the cause of action arose out of business done in the state, or had a nexus with a foreign corporation's activities in the state. In Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, at page 544, Judge Goodrich said, "The fact that the Supreme Court in the Perkins case held that such a limitation is no longer required, does not, as the Supreme Court said in that decision, compel the State to exercise jurisdiction over causes of action not growing out of local business." Other cases considering this phase of the problem are Albritton v. General Factors Corp., 5 Cir., 1953, 201 F.2d 138; Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 1953, 201 F.2d 233; Woodworkers Tool Works v. Byrne, 9 Cir., 1951, 191 F.2d 667; Robbins v. Benjamin Air Rifle Co., 5 Cir., 1954, 209 F.2d 173, and of course International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95.

[13] These cases indicate that the place the cause of action arose, or more specifically the nexus between the cause of action and the foreign corporation's activities in the state, is a fact to be considered in determining the question of doing business. The cases buttress our view that the California courts would hold that the limited activities of the defendant in the case at bar and the complete lack of connection between such activities and the cause of action claimed do not constitute the defendant present within the state for jurisdictional purposes.

We have been unable to find any "ticket cases"[11] in the California reports.

11. By "ticket cases" we use the term to apply to a situation such as that in the case at bar, in which the ticket of the defendant for transportation in other

There are such cases in other jurisdictions. We have heretofore quoted from Justice Brandeis in Philadelphia & Reading R. Co. v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710. This was strictly a ticket case, where the defendant transacted no business in the state, nor was any business transacted in its behalf, except the sale of its tickets by another carrier. Pike v. New England Greyhound Lines, Inc., D.C.Mass. 1950, 93 F.Supp. 669, was a similar case, and the court held that defendant was not doing business.[12]

There are many cases holding a foreign corporation not to be doing business, although in addition to the sale of connecting tickets, some additional facts in the category of doing business, as for example, offices, or paid employees, etc., were present.[13]

However, in a recent case, Scholnik v. National Airlines, Inc., 6 Cir., 1955, 219 F.2d 115, where action was commenced in Ohio for an injury received in Florida, the sale of tickets in Ohio by another carrier, covering passage over defendant's lines outside of Ohio was held to "furnish the necessary minimum contacts * * * so that the maintenance of a suit against it in that forum does not offend ' "traditional notions of fair play and substantial justice." ' " At page 119. There was present in the case however, a lease between the carriers which provided for fixed rates, exchange and use of the same planes and crews, etc., and thus the use of defendant's equipment in Ohio. There was no discussion as to the application of Ohio law to the problem of doing business.

There should be considered in passing on the "doing business" question, the fact that in effect we are asked to intrude into the internal affairs of a corporation domiciled in Alaska, which carries on its physical operations entirely out of the territorial jurisdiction of this court and to substitute our judgment for the business discretion of a board of directors concerning matters going to the very essence of the corporate structure and franchise, based on events which have occurred over a period of the past twelve years.

"It is a familiar doctrine of corporation law, recognized in California and Federal Jurisprudence, that courts will not exercise visitorial powers to interfere with the internal affairs of foreign corporations. There is only one deviation from this rule, i. e., when corporate acts are about to be performed in a state other than the state of organization, its courts may interfere with them. This is especially true when the property of the corporation is situated in the state and its business is carried on therein." Skelly v. Dockweiler, D.C.Cal., 75 F.Supp. 11, 16.

The sole activity of the foreign corporation in this state by which the plaintiff seeks to establish its presence here for the relief he seeks, is the sale of tic-

---

states, was sold in a particular state by a connecting carrier, and where the question arises as to whether such act alone, constitutes doing business on the part of the defendant in that state.

12. The court said: "The effect to be given in this case to the ticket sales described must be determined by federal rather than by state law * * *." At page 671.

13. Fiorella v. Baltimore & O. R. Co., D.C. Pa.1950, 89 F.Supp. 850, 851; Murray v. Great Northern Ry. Co., D.C.Pa.1946, 67 F.Supp. 944; Maxfield v. Canadian Pac. R. Co., 8 Cir., 1934, 70 F.2d 982,

certiorari denied 293 U.S. 610, 55 S. Ct. 140, 79 L.Ed. 700; Kilpatrick v. Texas & P. Ry. Co., D.C.N.Y.1947, 72 F. Supp. 635; Leakley v. Canadian Pacific Express Co., D.C.Alaska 1949, 82 F. Supp. 906 (sale of money orders); McGuire v. Great Northern R. Co., C.C. Iowa 1907, 155 F. 230; Goepfert v. Compagnie G. T., C.C.Pa.1907, 156 F. 196; General Inv. Co. v. Lake Shore & M. S. R. Co., 6 Cir., 1918, 250 F. 160, 166-167; Chase Bag Co. v. Munson Steamship Line, 1924, 54 App.D.C. 169, 295 F. 990 (prepaid purchase orders for tickets).

kets by independent contractors and connecting carriers. Weighing with care the facts of this case to determine whether the particular activity in, the relation to, and the *nexus* with the forum is of such substance as will make it just and equitable to conclude that Alaska is present in the sense required by the purpose at hand we find that although the activity may be regularly established, continuous and systematic, it is nevertheless insubstantial where the action seeks regulation not only of the business of the defendant but its internal affairs, and easily its very existence; that such sale of tickets without more is not sufficient to constitute the corporation present for the purposes sought.

## III

The Federal Constitutional question

Although we do not reach the federal constitutional question, the impact of the doctrine of *forum non conveniens* and sections 1404 and 1406 of the revision of Title 28, U.S.C.A. has tended to reduce the gravity of that problem.

In Latimer v. S/A Industries Reunidas F. Matarazzo, 2 Cir., 1949, 175 F.2d 184, at pages 185–186, certiorari denied 338 U.S. 867, 70 S.Ct. 141, 94 L.Ed. 531, Judge Hand said:

"'* * * 'presence' demands more than that the local activities shall be continuous and not sporadic; it includes as a second factor an 'estimate of the inconveniences which would result from requiring' the corporation 'to defend, where it has been sued.'"

Judge Hand then cited International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and its discussion of "Presence" and the "estimate of conveniences" and continued—

"this was what we have called the second factor in 'presence,' and in Kilpatrick v. Texas & Pacific Ry. Co., [2 Cir., 166 F.2d 788], we said that the issues involved in this second factor, so far as we could see, were indistinguishable from those which determined a plea, forum non conveniens.

"International Shoe Co. v. [State of] Washington, supra, was followed by Gulf Oil Corp. v. Gilbert, [330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055] and Koster v. (American) Lumbermens Mutual Cas. Co., [330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067] in which the Court held that the plea, forum non conveniens, was always open to a defendant in a case depending on diverse citizenship, even in cases where the personal jurisdiction was unquestioned. *These decisions answer any constitutional objection to dispensing altogether with the second factor in 'presence,'* because, even though it were held that doing any continuous business whatever subjected the corporation to a judgment in personam—as, for example, it does under § 6 of the Federal Employers' Liability Act, 45 U.S.C.A., § 56—it could relieve itself of any oppressive prejudice by recourse to the plea, forum non conveniens." [14]

Accordingly, the motions to quash service of summons, and to dismiss the action as to Alaska Airlines Inc., for lack of jurisdiction over the person of the defendant, are granted.

14. For similar views: Polizzi v. Cowles Magazines, Inc., 1953, 345 U.S. 663, at pages 670–671, 73 S.Ct. 900, 97 L.Ed. 1331, dissenting opinion of Judge Black; Toothill v. Raymond Laboratories, Inc., D.C.N.Y.1951, 100 F.Supp. 350, 353; Kendrick v. Seaboard Air Line R. R., D.C.Pa.1949, 98 F.Supp. 372, 373; Pan American Airways, Inc., v. Consolidated Vultee Aircraft Corp., D.C.N.Y.1949, 87 F.Supp. 926, 929–930; Goldstein v. Chicago, R. I. & P. R. Co., D.C.N.Y.1950, 93 F.Supp. 671, 680; Smith v. Louisville & N. R. Co., D.C.N.Y.1950, 90 F.Supp. 189, 190; See: Landell v. Northern Pac. Ry. Co., D.C.D.C.1951, 98 F.Supp. 479, 483.